UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>       Plaintiff,<br><br>  -against-<br><br>INFINITY Q DIVERSIFIED ALPHA FUND,<br><br>       Defendant. | 22 Civ. 09608 (PKC)<br><br>ECF CASE |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION ON CONSENT OF
DEFENDANT TO APPOINT A SPECIAL MASTER AND IMPOSE A LITIGATION
INJUNCTION**

               SECURITIES AND EXCHANGE COMMISSION
               Andrew Dean
               Osman Nawaz (Not admitted to S.D.N.Y.)
               Preethi Krishnamurthy
               Joshua Brodsky
               David H. Tutor
               Alistaire Bambach
               Neal Jacobson

               100 Pearl Street, Suite 20-100
               New York, New York 10004-2616
               (212) 336-0095 (Jacobson)
               Jacobsonn@sec.gov

**November 23, 2022**

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES……………………………………………………………..(i)

I. PRELIMINARY STATEMENT ...................................................................................1

II. FACTS .........................................................................................................................3

    A. The Defendant and Other Relevant Persons and Entities ...............................3

    B. Events Leading to the Instant Action................................................................4

        1. The February 21 Section 22(e) Order .....................................................4

        2. The Proposed Order ..................................................................................6

III. ARGUMENT ................................................................................................................7

    A. The Court Should Order the Appointment of a Special Master....................7

    B. The Court Should Enjoin Pending Litigation and the Filing of New Bankruptcy, Foreclosure, Receivership and Other Actions.......................................................8

    C. The SEC Proposes that the Court Appoint Andrew A. Calamari as Special Master.....9

IV. CONCLUSION...........................................................................................................11

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*SEC v. Amerindo Investment Advisors, Inc.*, 2013 U.S. Dist. LEXIS 49805 at *43-46 (S.D.N.Y., Mar. 11, 2013) ............................................................................................................................... 8
*SEC v. Amerindo Investment Advisors, Inc.*, 2014 U.S. Dist. LEXIS 66446 at *45-56 (S.D.N.Y., May. 6, 2014) ............................................................................................................................... 8
*SEC v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010) ............................................................................ 8
*SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1103 (2d Cir. 1972) ................................ 7
*SEC v. Rockwell Energy of Tex., LLC*, 2012 U.S. Dist. LEXIS 12902 at *2 (S.D. Tex., Feb. 1, 2012) ....... 8
*SEC v. Rupay-Barrington Capital Management, Inc.*, No. 00-civ. 1482 (N.D. Tex., July 10, 2000) .......... 8
*SEC v. WorldCom, Inc.*, 2002 U.S. Dist. LEXIS 14201 at * 1 (S.D.N.Y., Aug. 1, 2002) ............................ 8
*See Reserve Fund Secs. & Derivative Litig. V. Reserve Mgmt. Co.*, 673 F. Supp. 2d 182, 202-03 (S.D.N.Y. 2009) ............................................................................................................................ 8

**Statutes**

15 U.S.C. § 80a-22(e) ................................................................................................................ 4
15 U.S.C. § 78u(d)(5) ................................................................................................................ 7

**Rules**

17 C.F.R. § 270.22c-1 ................................................................................................................ 4
Fed. R. Civ. P. 53(a)(1)(A) ........................................................................................................ 7

Plaintiff Securities and Exchange Commission (the "SEC") respectfully submits this memorandum of law in support of its motion ("Motion") on consent of Defendant Infinity Q Diversified Alpha Fund, a public mutual fund ("the Fund"), to appoint a special master and impose a litigation injunction.

I.     **PRELIMINARY STATEMENT**

The SEC, on consent of the Fund, requests that the Court enter an order, in the form annexed hereto (the "Proposed Order"), appointing a special master and imposing a litigation injunction.[1] The SEC believes that a special master, subject to Court supervision, is necessary to administer a claims and distribution process to return hundreds of millions of dollars remaining in the Fund (the "Special Reserve") to defrauded investors. As discussed more fully below, the Fund was liquidated after it was discovered that James Velissaris, the founder, chief investment officer, and principal of its adviser had materially mismarked and fraudulently inflated the value of the Fund's securities holdings over a period of many years.

To date, the fully liquidated Fund has returned approximately $670 million to current investors, with an additional approximately $570 million remaining in the Special Reserve established by the Fund's Board of Trustees (the "Board"), to be distributed to defrauded investors after the Fund has satisfied all of its liabilities. The Proposed Order provides that the special master will work with the Board and its professionals to propose a consensual claims and distribution process, but, if the special master and the Board cannot agree on a consensual process, the special master will have the authority to propose for Court approval the special master's own claims and distribution process.

---

[1] In addition to the Fund's consent, plaintiffs' counsel in the only two pending actions that the Proposed Order would enjoin have advised the SEC staff that they have no objection to entry of the Proposed Order at this time, and they are being served with this Motion by email and overnight mail.

The appointment of a special master, the institution of a claims and distribution process subject to Court oversight, and the litigation injunction are necessary for three primary reasons.

First, a special master, acting as a fiduciary of the Court, is the appropriate party to determine the methodology to be used for evaluating distribution alternatives for remaining Fund assets and making the final selection of a distribution methodology to shareholders. The special master will also be able to implement an orderly and transparent claims process to return the Fund's remaining assets to investors in an expeditious manner. Absent the finality of a Court-supervised claims and distribution process, the return of Fund assets would be unduly delayed due to the lack of a centralized forum to finally resolve disputes and approve distributions.

Second, the Fund will be able to establish an appropriate and possibly reduced Special Reserve. The purpose of the Special Reserve is to satisfy the claims asserted in class action litigation pending against the Fund ("Class Action") and any by other potential creditors that may have claims against the Fund before additional distributions can be made to investors. The Fund has reached a settlement in principle in the Class Action litigation, which is subject to court approval, that sets the Fund's and other parties' liabilities and provides for mutual releases, but that settlement will likely not be finalized until at least 2023.[2] If the Class Action settlement is approved, the Fund will no longer have to set aside a reserve for that litigation (thus reducing the

---

[2] The Class Action cases pending against the Fund are *In re Infinity Q Diversified Alpha Fund Securities Litigation*, Index No. 651295/2021 (N.Y. Sup. Ct.) (together with *Dominus Multimanager Fund, Ltd. v. Infinity Q Capital Management, LLC, et. al.*, Index No. 652906/2022 (N.Y. Sup. Ct.), the "State Action"); and *In re Infinity Q Diversified Alpha Fund and Infinity Q Volatility Alpha Fund L.P. Securities Litigation* (formerly known as *Yang v. Trust for Advised Portfolios, et al.*), Case No. 1:21-cv-01047-FB-MMH (E.D.N.Y) (the "Federal Action"). Justice Borrok in the State Action is presiding over the approval of the settlement of the State and Federal Actions. The stipulation of settlement creates a cash fund of approximately $40 million funded by defendants other than the Fund, so that none of the Special Reserve is being depleted to fund the settlement.

Special Reserve). Because the Class Action litigation is in the settlement stage and the settlement will benefit the Fund, the proposed litigation injunction would not apply to the Class Action litigation. However, anyone opting out of the Class Action would be enjoined by the litigation injunction from bringing an action against the Fund outside of the claims process contemplated by the Proposed Order.[3] The appointment of a special master and the imposition of a litigation injunction with respect to non-Class Action litigation will thus permit the Fund to establish the appropriate (and likely reduced) Special Reserve and effect a final distribution to harmed investors more expeditiously.

Finally, the Proposed Order sets forth a transparent process for the Special Master to approve the payment of professional fees and expenses, as well as the payment of other Fund expenses from the Fund, subject to the Court's supervision, thus maximizing potential recoveries for shareholders.

## II.   FACTS

The facts and evidence supporting this motion are contained in the Complaint filed by the Commission dated, November 10, 2022, and this Memorandum of Law in support of the Motion.

### A.   The Defendant and other Relevant Persons and Entities

Defendant **Infinity Q Diversified Alpha Fund** (the "Fund") is a series of the Trust for Advised Portfolios ("TAP"), an open-end registered investment company. The Fund is also a "commodity pool" under the U.S. Commodity Exchange Act. The shares of the Fund, consisting of Investor and Institutional classes, are registered under the Securities Act of 1933.

---

[3] The proposed litigation injunction also would not apply to the derivative action styled *Rowan v. Infinity Q Capital Management, LLC, et al.*, C.A. No. 2022-0176-MTZ (Del. Chancery Ct.), for which a motion to dismiss is pending.

**TAP** is a Delaware statutory trust registered under the Investment Company Act as an open-end series management investment company. The Fund is a series of TAP.

**The Board of Trustees of TAP** (the "Board") oversees the Fund.

**Infinity Q Capital Management, LLC** ("Infinity Q") is a registered investment adviser headquartered in New York, NY.  Infinity Q was organized as a Delaware limited liability company on April 7, 2014.  Infinity Q's principal owners are a limited partnership and Infinity Q Management Equity, LLC.  Infinity Q Management Equity, LLC, is principally owned by James Velissaris.  Infinity Q served as investment adviser to the Fund.

### B. Events Leading to the Instant Action

The Fund is an SEC-registered investment adviser that purported to offer retail investors "access to investment strategies typically reserved for elite high net worth clients."  Infinity Q primarily advised two funds: (1) the Fund; and (2) the Infinity Q Volatility Alpha Fund, L.P., a Delaware limited partnership and private fund.

The Fund, which commenced operations in September 2014, was organized as a series of TAP.  As an open-end mutual fund, the Fund was required to issue and redeem its shares at a price based on their current Net Asset Value ("NAV"), *see* Rule 22c-1 under the Investment Company Act of 1940, 17 C.F.R. § 270.22c-1, and, absent an SEC exemptive order, was prohibited from suspending shareholders' right of redemption.  *See* Section 22(e) of the Investment Company Act, 15 U.S.C. § 80a-22(e)..

### 1. The February 2021 Section 22(e) Order

On February 22, 2021, Infinity Q and the Board filed an application with the SEC for an Order pursuant to Section 22(e)(3) of the Investment Company Act to suspend redemptions in the Fund following the discovery of a mismarking scheme perpetrated by Infinity Q and its chief

investment officer, James Velissaris. The order was approved by the SEC that same day (the "22(e) Order").[4]

In the application for the Section 22(e) Order, Infinity Q and the Board stated:

"On February 18, 2021, based on information learned by the Commission staff and shared with Infinity Q, Infinity Q informed the Fund that Infinity Q's Chief Investment Officer had been adjusting certain parameters within the third-party pricing model that affected the valuation of the Swaps. On February 19, 2021, Infinity Q informed the Fund that at such time it was unable to conclude that these adjustments were reasonable, and, further, that it was unable to verify that the values it had previously determined for the Swaps were reflective of fair value. . . . As a result, the Fund was unable to calculate an NAV on February 19, 2021, and it is uncertain when the Fund will be able to calculate an NAV that would enable it to satisfy requests for redemptions of Fund shares.

The Fund and Infinity Q believe that the best course of action for current and former shareholders of the Fund is to liquidate the Fund in a reasonable period of time, determine the extent and impact of the historical valuation errors, and return the maximum amount of proceeds to such shareholders."

The Fund's reported NAV of its holdings on February 18, 2021, the last trading day before the Section 22(e) Order was entered, was approximately $1.73 billion. After liquidating its assets, the Fund held approximately $1.25 billion. Among other things, the Section 22(e) Order required the Board to develop and implement a plan of distribution ("Plan of Distribution") to return the Fund's remaining assets to shareholders subject to the supervision of the Commission. In November 2021, the Board finalized the Plan of Distribution, and the Fund made an interim distribution of approximately $500 million, or about 40% of the Fund's gross

---

[4] On February 17, 2022, the Commission commenced a civil action against Velissaris, the founder and former chief investment officer of Infinity Q, for violating the anti-fraud and other provisions of the federal securities laws concerning his mismarking of the assets held by the Fund. *See SEC v. Velissaris*, 22 Civ. 1346 (S.D.N.Y.). Also on February 17, 2022, the United States Attorney's Office for the Southern District of New York unsealed an indictment charging Velissaris with securities and other frauds, making false statements to auditors, and obstruction of justice for his conduct concerning the Fund and the private fund advised by Infinity Q. *See United States v. Velissaris*, 22 Cr. 105 (S.D.N.Y.). On November 21, 2022, Velissaris pled guilty to securities fraud. In addition, On September 30, 2022, the Commission charged Scott Lindell—the former Chief Risk Officer, head of operations, and Chief Compliance Officer, and a former portfolio manager and Valuation Committee member of Infinity Q— for his role in the overvaluation scheme. *See SEC v. Lindell*, 22 Civ. 8368 (S.D.N.Y.).

assets, on a pro rata basis to each current shareholder (as of February 18, 2021), based on the number of shares held by that shareholder in each class as a fraction of the total number of shares in that class. On March 31, 2022, the Board authorized a second interim distribution of $170 million to the Fund's current shareholders, leaving approximately $570 million in the Special Reserve to satisfy the Fund's current and potential future liabilities, including the Class Action litigation-related claims, with the remainder to be distributed thereafter.

Subsequently, the Fund retained a consulting firm ("Consulting Firm") to revalue the Fund's bilateral Over-The-Counter ("OTC") derivatives positions, principally variance swaps, which comprised a significant portion of the Fund's holdings. The Consulting Firm determined that the Fund's bilateral OTC derivatives positions were overstated at each month-end date from February 2017 through January 31, 2021. Based on the Fund's re-valuation of these positions, the Fund is facing approximately $500 million in losses due to the mispricing of the assets at issue.

**2. The Proposed Order**

As stated above, the SEC and the Fund have reached agreement on the terms of the Proposed Order that the SEC believes is in the best interests of the Fund's investors. The material terms of the Proposed Order are the following:

- The Court will take exclusive jurisdiction over the Special Reserve (Par. 1)

- The special master will (i) take control over the Special Reserve, and make recommendations and/or respond to proposals to reduce the Special Reserve for the purpose of making distributions to the Fund's shareholders including the authority to make recommendations to amend the Board's Plan of Distribution; (ii) oversee and manage the Plan of Distribution including making recommendations to the Court to amend the Plan of Distribution; (iii) be the sole authorized signatory for all of the Special Reserve's assets and recommend payments from the special reserve up to specific limits, except with respect to his and his retained professionals' fees, as well as the fees of the Special Litigation Committee and its professionals (discussed further below) which will be subject to Court approval pursuant to a fee application

- procedure; and (iv) recommend a claims process for filing claims against the Fund. (Par. 2)

- The Court will enter a stay of two pending actions that are not the subject of the Class Action settlement as well as future actions against the Fund and indemnitees of the Fund in order to preserve the Court's jurisdiction over the limited fund (discussed further below). (Par. 12)

- The special master will file periodic status reports with the Court reflecting the value of the Special Reserve and the extent of claimed legal liabilities against the Fund and receipts and disbursements from the Fund. (Pars. 23 & 24)

- The special master, his retained professionals, and the SLC (discussed below) and their professionals, will file fee applications with the Court. (Pars. 25-29)

- The special master will submit a final accounting to the Court. (Par. 30)

### III.  ARGUMENT

**A. The Court Should Order the Appointment of a Special Master**

The Court should appoint a special master to implement a claims and distribution process for the benefit of the Fund's defrauded investors. "Once the equity jurisdiction of the district court has been properly invoked by a showing of a securities law violation, the court possesses the necessary power to fashion an appropriate remedy," and "it is for the federal courts to adjust their remedies so as to grant the necessary relief where federally secured rights are invaded." *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1103 (2d Cir. 1972). In addition to a court's inherent equitable authority, statutory authority under Exchange Act Section 21(d)(5) provides: "In any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors."  15 U.S.C. § 78u(d)(5).

Federal Rule of Civil Procedure 53 governs the appointment of special masters, and provides that a special master may "perform duties consented to by the parties." Fed. R. Civ. P.

7

53(a)(1)(A). Courts routinely exercise their authority to appoint fiduciaries, including special masters, to remedy violations of the federal securities. *See, e.g., SEC v. Rockwell Energy of Tex., LLC*, 2012 U.S. Dist. LEXIS 12902 at *2 (S.D. Tex., Feb. 1, 2012) (court appointed special master to liquidate assets and make claims distributions); Order Appointing Special Master in *SEC v. Rupay-Barrington Capital Management, Inc.*, No. 00-civ. 1482 (N.D. Tex., July 10, 2000) (court appointed special master on consent to liquidate fund assets and to propose a plan of distribution); *SEC v. WorldCom, Inc.*, 2002 U.S. Dist. LEXIS 14201 at * 1 (S.D.N.Y., Aug. 1, 2002) (court noted its prior appointment of a corporate monitor as an officer of the Court to oversee many aspects of WorldCom's operations); *SEC v. Amerindo Investment Advisors, Inc.*, 2013 U.S. Dist. LEXIS 49805 at *43-46 (S.D.N.Y., Mar. 11, 2013) (appointing receiver to marshall and preserve defendants' assets); *SEC v. Amerindo Investment Advisors, Inc.*, 2014 U.S. Dist. LEXIS 66446 at *45-56 (S.D.N.Y., May. 6, 2014) (court approved receiver's proposed distribution of assets to investors).

### B. The Court Should Enjoin Pending Litigation and the Filing of New Bankruptcy, Foreclosure, Receivership, and Other Actions

"[D]istrict courts may issue litigation injunctions barring bankruptcy filings as part of their broad equitable powers in the context of an SEC receivership." *SEC v. Byers*, 609 F.3d 87, 91 (2d Cir. 2010) (joining the Ninth and Sixth Circuits). Moreover, imposition of a litigation injunction is appropriate to protect the court's jurisdiction over the Fund's limited assets for the benefit of defrauded investors. *See Reserve Fund Secs. & Derivative Litig. V. Reserve Mgmt. Co.*, 673 F. Supp. 2d 182, 202-03 (S.D.N.Y. 2009) (court entered litigation injunction in connection with implementation of distribution plan recommended by the SEC for a mutual fund subject to the court's jurisdiction, as injunction was necessary to preserve the court's jurisdiction over a "limited res" and was authorized by the All Writs Act and Section 21(d)(5) of the

Exchange Act, which allows the court to "grant any equitable relief that may be appropriate or necessary for the benefit of investors").

Here, the SEC believes that imposing a litigation injunction, staying the two non-Class Action ancillary litigations and enjoining future actions against the Fund and indemnitees of the Fund, is necessary to protect the Court's jurisdiction over the remaining Fund assets. The litigation injunction would prevent potentially disparate actions in different courts that could affect the assets subject to this Court's jurisdiction and control and would foreclose additional actions against the Fund and against persons and entities who are indemnitees of the Fund, and allow those persons and entities to file claims against the Fund in this Court pursuant to the claims process contemplated by the Proposed Order. Importantly, the injunction will centralize potential Class Action opt outs in a single forum, encourage settlement of those and other claims through a speedy and efficient process, and result in a timely distribution to investors without the attendant delay inherent if multiple suits are filed claiming the Fund's assets.

### C. The SEC Proposes that the Court Appoint Andrew A. Calamari as Special Master

The SEC staff conducted a selection process pursuant to which it interviewed potential candidates and selected Andrew A. Calamari, who is supported by both the SEC and the Fund here as being in the best interests of the Fund's investors. Mr. Calamari is an experienced securities lawyer and is currently a partner with Finn Dixon and Herling, ("Finn Dixon") based in Stamford, CT. Mr. Calamari worked in private practice for nearly 15 years before joining the SEC as an enforcement attorney in 2000. Mr. Calamari also served as the Director of the SEC's

New York Regional Office from October 2012 through October 2017 before moving to Finn Dixon.[5]

Mr. Calamari also will not require any learning curve as he currently serves as one of two members of the independent Special Litigation Committee ("SLC") created by the Fund's Board on December 28, 2021, for the purpose of investigating and pursuing potential claims on behalf of the Fund. The SLC is comprised of two independent Series Trustees who had no material connection to the Fund or to any parties to this action prior to their appointment. The SEC and the Fund believe that Mr. Calamari's role on the SLC will not pose any conflict with his duties as a special master. The only area of potential conflict involves the special master's role in approving the payment of professional fees from the Special Reserve. Due to Mr. Calamari's membership on the SLC, Mr. Calamari as well as his and the SLC's retained professionals will be required to file fee applications with the Court which will be reviewed by the SEC, the Fund and, by being filed on the public docket, accessible to Fund investors among others. The SEC believes that this procedure will ensure that Mr. Calamari's dual roles will pose no conflict of interest.

---

[5] If the Court approves of Mr. Calamari's appointment, the Proposed Order provides that the Court also approves the retention of Finn Dixon without the need for Finn Dixon to file a separate retention application and requires Finn Dixon to file a declaration disclosing its connections, if any, to the parties to this case.

## CONCLUSION

For the foregoing reasons, the SEC requests that the Court enter the Proposed Order appointing a special master and imposing a litigation injunction, and grant such other and further relief as is just.

Dated: New York, New York
November 23, 2022

Respectfully submitted,

By: /s/Neal Jacobson
Neal Jacobson
Andrew Dean
Osman Nawaz (Not admitted to S.D.N.Y.
Preethi Krishnamurthy
Joshua Brodsky
David H. Tutor
Alistaire Bambach

100 Pearl Street, Suite 20-100
New York, New York 10004-2616
(212) 336-0095 (Jacobson)
Jacobsonn@sec.gov