**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**SECURITIES AND EXCHANGE COMMISSION,**

Plaintiff,

**v.**

**INFINITY Q DIVERSIFIED ALPHA FUND,**

Defendant.

22 Civ. 09608 (PKC)

ECF CASE

## [PROPOSED] CONSENTED TO ORDER APPOINTING SPECIAL MASTER AND IMPOSING LITIGATION INJUNCTION

**WHEREAS**, the Securities and Exchange Commission ("Commission" or "Plaintiff")
filed this action on November 10, 2022, against defendant Infinity Q Diversified Alpha Fund (the
"Fund"), a Series of Trust for Advised Portfolios (the "Trust");

**WHEREAS**, on February 22, 2021, Infinity Q Capital Management, LLC ("Infinity Q"),
and the Trust, on behalf of the Fund (together, the "Applicants"), applied (the "Application") to
the Commission under Section 22(e)(3) of the Investment Company Act of 1940 [15 U.S.C. §
80a–22(e)] for a temporary order permitting the Fund to suspend the right of redemption of its
outstanding redeemable securities;

**WHEREAS**, in the Application the Applicants stated that the Fund was unable to
calculate the fair value of its swap instruments, which constituted approximately 18% of the
Fund's net asset value ("NAV") and was, therefore, unable to calculate an accurate NAV due to,
among other things, the following: (1) "on February 18, 2021, . . . Infinity Q informed the Fund
that Infinity Q's Chief Investment Officer had been adjusting certain parameters within the third-

party pricing model that affected the valuation of the Swaps," and (2) "Infinity Q informed the Fund that at such time it was unable to conclude that these adjustments were reasonable, and, further, that it was unable to verify that the values it had previously determined for the Swaps were reflective of fair value";

**WHEREAS**, on February 22, 2021, the Commission granted the order permitting the Fund to suspend the right of redemption of its outstanding redeemable securities "until it has liquidated, or until the Commission rescinds the order" (the "Commission Order") (*see* Investment Company Act Release No. 34198; 812-15205);

**WHEREAS**, the Commission Order remains in full force and effect, and the Special Master (as defined below) shall comply with all terms of the Commission Order unless otherwise ordered by the Court upon good cause shown after consultation with the Commission staff;

**WHEREAS,** on February 18, 2021, the last day on which the Fund calculated its NAV before suspending redemptions, the Fund's stated NAV was $1,727,194,948.50;

**WHEREAS**, pursuant to the Commission Order, the Fund liquidated all securities it held, and after liquidation, the Fund held cash in the approximate amount of $1.25 billion;

**WHEREAS**, the Fund's assets are composed of the cash and cash equivalents obtained from the liquidation of Fund assets, including, without limitation, the Special Reserve (defined below), the Fund's legal claims against third parties, and any rights of the Fund to insurance under any and all applicable policies (together, the "Fund Assets");

**WHEREAS**, on June 7, 2021, in accordance with the Commission Order, the Fund submitted a Plan of Distribution to the Commission staff, and the Fund revised and finalized the Plan of Distribution as of November 8, 2021 (the "Plan");

WHEREAS, the Plan and its implementation are subject to the supervision of the Commission, as required by the terms of the Commission Order;

WHEREAS, as set forth in the Plan, the Fund established a special reserve of approximately $750 million to cover the Fund's current and future expenses and potential liabilities including for class action lawsuits pending in state and federal courts against the Fund, as well as legal fees and potential indemnification claims against the Fund (the "Special Reserve");

WHEREAS, on December 3, 2021, after consultation with and review by the Commission staff, the Fund commenced an interim distribution of $500 million to the Fund's current shareholders, which interim distribution was substantially completed in February 2022;

WHEREAS, on or about December 20, 2021, the Board of Trustees of the Trust, on behalf of the Fund (the "Board"), approved the formation of a Special Litigation Committee (the "SLC") for the purpose of investigating and, if the SLC deems appropriate, pursuing or otherwise resolving the Fund's potential claims in connection with (i) the events giving rise to the Commission Order and (ii) the events that followed from the Commission Order (collectively, "Fund Litigation Claims"), and the SLC is currently comprised of Andrew M. Calamari and John C. Siciliano (each a series trustee of the Trust);

WHEREAS, on or about March 31, 2022, after consultation with and review by the Commission staff, the Fund reduced the Special Reserve to approximately $570 million and authorized a second interim distribution of $170 million to the Fund's current shareholders, which second interim distribution was substantially completed in April and May 2022;

WHEREAS, since December 2021, the Trust and the Fund have participated in an ongoing mediation through an independent mediator of certain securities class actions

("Mediated Securities Class Actions") currently pending in the Supreme Court of the State of New York and County of New York and in the federal district court in the Eastern District of New York (*see In re Infinity Q Diversified Alpha Fund Securities Litigation*, No. 651295/2021 (N.Y. Sup. Ct., Comm Div.) (Borrok, J.); *In re Infinity Q Diversified Alpha Fund and Infinity Q Volatility Alpha Fund L.P. Securities Litigation* (formerly known as *Yang v. Trust for Advised Portfolios, et al.*), No. 1:21-cv-01047-FB-MMH (E.D.N.Y.); *Dominus Multimanager Fund, Ltd. v. Infinity Q Capital Management, LLC, et. al.,* Index No. 652906/2022 (N.Y. Sup. Ct.)), and the Trust and Fund have committed the available balance of the coverage available to the Trust under the Trust's insurance policy toward settlement of the Mediated Securities Class Actions;

**WHEREAS**, on or about February 17, 2022, the United States Attorney's Office for the Southern District of New York unsealed an indictment charging James Velissaris, the founder and former chief investment officer of Infinity Q, with securities and other frauds, making false statements to auditors, and obstruction of justice concerning the Fund, *see United States v. Velissaris*, 22 Cr. 105 (S.D.N.Y. Feb. 17, 2022), and on November 21, 2022, Mr. Velissaris pled guilty to securities fraud;

**WHEREAS**, on or about February 17, 2022, the Commission commenced a civil action against Mr. Velissaris for, *inter alia*, violating the anti-fraud and other provisions of the federal securities laws concerning the Fund, *see SEC v. Velissaris*, 22 Civ. 1346 (S.D.N.Y. Feb. 17, 2022);

**WHEREAS** on or about February 17, 2022, the Commodity Futures Trading Commission also filed a civil action against Mr. Velissaris for violating the anti-fraud and other provisions of the Commodity Exchange Act concerning the Fund, *see CFTC v. Velissaris,* 22 Civ. 1347 (S.D.N.Y. Feb. 17, 2022);

4

WHEREAS, on September 7, 2022, the Trust and Fund and other parties in the Mediated Securities Class Actions entered into a Stipulation of Settlement and related documents which proposes a settlement of all the Mediated Securities Class Actions, subject to both the ability of class members to object or opt-out of the proposed settlement and the review and approval of the courts in those actions (the "Proposed Settlement");

WHEREAS, the Proposed Settlement, if approved by the courts in those actions, would fully resolve the Mediated Securities Class Actions without the contribution of any funds from the Special Reserve to the settlement fund;

WHEREAS, the Board and the Commission (each a "Party", and collectively, the "Parties") hereby consent to the appointment of a special master under Federal Rules of Civil Procedure Rule 53(a)(1) to perform only the following specific duties set forth in this Order; and

WHEREAS, the Parties believe that it would be in the best interests of the Fund that, in light of his familiarity with the matter while serving as an independent series trustee of the Trust, Mr. Calamari be appointed as special master to perform only the specific duties set forth in this Order. Mr. Calamari and the Parties agree that Mr. Calamari's concurrent service as a member of the SLC and as special master as set forth in this Order poses no material conflict of interest that would prevent Mr. Calamari from serving in both roles.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

## I.  Exclusive Jurisdiction

1.      Except as otherwise provided in this Order, the Court shall have exclusive jurisdiction over the Special Reserve and over all matters arising out of, and related to, the Special Reserve.

## II. Appointment of Special Master

2.      Until further Order of this Court, Andrew M. Calamari is hereby appointed to serve without bond as special master (the "Special Master") to proceed with all reasonable diligence to perform only the following duties consented to by the Parties:

A.      Take and retain immediate possession and control of the Special Reserve and all books, records, and documents related to the Special Reserve pursuant to Paragraph 7 hereof;

B.      Oversee and manage the Special Reserve, including, without limitation, making or responding to any proposal to the Court to reduce the amount of the Special Reserve for the purpose of making additional distributions to the Fund's shareholders;

C.      Oversee and manage the Plan, including, without limitation, authority to make recommendations within ninety (90) days of entry of this Order to amend the Plan, subject to Court approval, to ensure a fair and equitable distribution of the Special Reserve;

D.      Except as provided in this Order, to have exclusive control of, and be made the sole authorized signatory for, all accounts at any bank, brokerage firm, or financial institution that has possession or control of the Special Reserve;

E.      Except as otherwise provided in this Order, pay from the Special Reserve without further order of the Court the expenses and liabilities of the Fund, including without limitation (i) the necessary expenses required to preserve the Fund Assets and to facilitate the Special Master's ability to make distributions to investors; (ii) payments to Indemnitees; and (iii) fees and expenses incurred by counsel to

the Trust in connection with the Mediated Securities Class Actions; provided, however, that the Special Master shall not make any payments or transfers of property on account of any debt or obligation incurred prior to the entry of this Order, without prior order of the Court; provided further, however, that the Special Master shall not make any payment in excess of $50,000 without further Order of the Court.  Notwithstanding the foregoing, the Special Master (i) is authorized to pay up to $250,000 per month in professional fees and expenses to each professional of an Indemnitee (or to each Indemnitee on account of the Indemnitee's payment of such fees or expenses) if the Special Master determines each such payment is made in satisfaction of a valid and good faith obligation of the Fund, whether by indemnification or otherwise, upon ten days' notice to the Court and the Commission (each, a "Professional Payment Notice"); and (ii) need not obtain Court approval prior to disbursements from the Special Reserve for expenses in the ordinary course of making distributions and winding down the Fund; provided, however, that the fees and expenses incurred by the Special Master, the Special Master's Retained Personnel (as defined below), and the SLC, shall only be subject to payment pursuant to the procedures in Article IX below. The Special Master is authorized to make all payments in connection with a Professional Payment Notice if the ten days' notice period has expired without any objection being filed.  If any objection is filed, the Court shall schedule a hearing on approval of the payment contemplated by the Professional Payment Notice.  In the event the Special Master denies payment of any alleged liability of the Fund or fails to act within 30 days of any request for such payment, the party

seeking such payment may, upon ten days' notice to the Special Master, apply to the Court to order payment of such liability on notice and an opportunity to be heard.

F.      Engage and employ persons, including, without limitation, accountants and attorneys, to assist in the carrying out of the Special Master's duties and responsibilities hereunder, subject to prior order of the Court as further provided below;

G.      Recommend, for Court approval, a process for filing of claims against the Fund that includes a bar date for the filing of such claims, it being understood that no current shareholder of the Fund shall be required to file a claim relating to their ownership of shares of the Fund that remained outstanding as of February 19, 2021, unless such shareholder has a claim relating to the amount of the shareholder's distribution from the Fund received pursuant to the Plan or a claim not released under the Proposed Settlement or other applicable settlement documents;

H.      If appropriate, the Special Master shall take all necessary steps to enable the Fund to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations; and

I.      Take such other action as may be approved by the Court upon consent of the Parties.

3.      Except as otherwise expressly provided in Paragraph 2 of this Order, the powers, authorities, rights, and duties of the SLC and any and all members of the Board, officers,

directors, and other agents and advisers with respect to the operation and administration of the Fund, shall remain in full force and effect.

4.     Except as further ordered by the Court with the consent of the Parties, the Special Master (i) in consultation with the SLC, shall accept any recoveries on account of liquidated Fund Litigation Claims to augment the Special Reserve; (ii) shall not manage or defend any litigation and claims against the Fund, as all such litigation and claims shall be defended, on behalf of the Fund, by the Trust and its counsel including, without limitation, mediation, defense or resolution of the Mediated Securities Class Actions; (iii) shall not manage or pursue any insurance related claims and litigation to which the Fund is a party; and (iv) shall not manage or pursue any litigation or alternative dispute resolution proceeding pending or brought by the SLC in connection with Fund Litigation Claims.

5.     The Special Master shall at all times administer the Special Reserve pursuant to Paragraph 2 of this Order with the care and diligence that an ordinary prudent individual would use in handling such person's own estate.

6.     The Special Master is authorized to cooperate and consult with each of the Parties in connection with the performance of the Special Master's duties under this Order.

### III. Access to Information

7.     The Trust, Fund, and Infinity Q, and each of their respective current and former trustees, officers, directors, managers, managing members, agents, attorneys, auditors, accountants and employees, as well as those acting in their place, shall preserve and, as reasonably requested by the Special Master, turn over to the Special Master all books and records (including electronic information) that are necessary for the Special Master to fulfill his duties set forth in Paragraph 2 of this Order, subject to and limited by attorney-client privilege, attorney

work product protections and other applicable privileges under federal or state law and by Fifth Amendment rights.

8.      The Trust and Infinity Q and each of their respective current and former trustees, officers, directors, managers, managing members, general and limited partners, agents, attorneys, auditors, accountants, and employees, as well as those acting in their place, shall, as reasonably requested by the Special Master, cooperate with the Special Master in his or her performance of the duties set out in Paragraph 2 of this Order, subject to and limited by attorney-client privilege, attorney work product protections, and other applicable privileges under federal or state law and by Fifth Amendment rights.

### IV.  Notice to Third Parties

9.      The Special Master shall promptly give notice of the Special Master's appointment to all known persons and entities including past and present trustees, officers, directors, managers, managing members, agents, attorneys, accountants, and employees of the Fund, as the Special Master deems necessary or advisable to carry out the Special Master's duties set forth in Paragraph 2 of this Order.

### V. Injunction Against Interference with Special Master

10.      All persons and entities receiving notice of this Order by personal service, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Special Master, that would:

    A.      Interfere with the Special Master's efforts to take control, possession, or management of the Special Reserve pursuant to this Order; such prohibited actions include but are not limited to, using self-help or executing or issuing or

10

causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon the Special Reserve;

B.   Hinder, obstruct, or otherwise interfere with the Special Master in the performance of the Special Master's duties set forth in this Order; such prohibited actions include but are not limited to, concealing, destroying, or altering records or information;

C.   Except as otherwise provided in this Order, dissipate or otherwise diminish the value of the Special Reserve; such prohibited actions include but are not limited to, disposing, transferring, exchanging, assigning, or in any way conveying any of the Special Reserve, enforcing judgments, assessments, or claims against the Fund or any Fund Assets; or attempting to modify, cancel, terminate, call, extinguish, revoke, or accelerate (the due date) of any lease, loan, mortgage, indebtedness, security agreement, or other agreement executed by the Fund or which otherwise affects any Fund Assets.

11.   The Special Master shall promptly notify the Court, Commission staff, and the Trust of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

### VI. Stay of Litigation

12.   As set forth in detail below, the following proceedings, ***excluding*** (i) the instant proceeding, (ii) all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, (iii) all actions pending or to be brought by the United States of America or any of its agencies, (iv) the Mediated Securities Class Actions, (v) any

litigation or alternative dispute resolution proceeding pending or to be brought by the SLC in connection with Fund Litigation Claims, (vi) the derivative action styled *Rowan v. Infinity Q Capital Management, LLC, et al.*, C.A. No. 2022-0176-MTZ (Del. Chancery Ct.) (the "Rowan Action"), and (vii) any litigation relating to any insurance policy under which the Fund is an insured, are stayed until further Order of this Court:

A.  All pending or future civil legal proceedings of any nature, including, but not limited to, securities litigation, derivative litigation on behalf of the Fund or on behalf of the Trust relating to the Fund (including without limitation any demands upon trustees of the Fund and/or series trustees of the Fund to take any action or commence any derivative litigation), bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, books and records demands under Delaware law or other actions of any nature involving: (a) the Special Master, in the Special Master's capacity as Special Master; (b) the Fund or any Fund Assets, wherever located; and (c) the civil actions against any and all purported Indemnitees as defined and limited by Exhibit A to this Order, as may be supplemented by the Special Master and/or counsel to the Trust upon Court approval, that seeks a judgment or award that would be payable or subject to indemnification by the Fund (all such proceedings are hereinafter referred to as "Ancillary Proceedings").  A current list of pending Ancillary Proceedings stayed by this Order is set forth in Exhibit B to this Order.

B.  For the avoidance of any doubt, the Mediated Securities Class Actions, the Rowan Action, and any litigation relating to any insurance policy under which the Fund is an insured, are not stayed by this Order.  Notwithstanding the foregoing, the SEC

and/or the Special Master may move this Court to have the stay of litigation in this Order extend to the Mediated Securities Class Actions and the *Rowan* Action for any reason including, without limitation, to protect the Fund and to establish the appropriate Special Reserve to effect a final distribution to the Fund's shareholders.

13. Other than notifying the court in such Ancillary Proceedings of this Order, the parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any Ancillary Proceeding, or from taking any action, in connection with any such Ancillary Proceeding, including, but not limited to, the issuance or employment of process.

14. Any and all persons or entities that seek to put the Fund into voluntary or involuntary bankruptcy proceedings must seek leave of Court on motion upon no less than 14 days' notice to the Special Master, the Commission and the Trust.  Any such motion must show good cause for the filing of voluntary or involuntary bankruptcy proceedings for the Fund and shall carry the burden of demonstrating to the Court that the Fund is eligible to be a debtor under the Bankruptcy Code.

15. All Ancillary Proceedings are stayed in their entirety, and all courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court.

## VII. Liability of Special Master

16. The Special Master has a continuing duty to ensure that there are no conflicts of interest between the Special Master, the Special Master's Retained Personnel, and the Fund and the Fund Assets.

17. Until further Order of this Court, the Special Master shall not be required to post

bond or give an undertaking of any type in connection with the Special Master's fiduciary obligations in this matter.

18.     The Special Master and Retained Personnel are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree.  In no event shall the Special Master or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Special Master or Retained Personnel.

19.     The Special Master, the Retained Personnel and agents acting at their direction shall be indemnified by the Fund, except for gross negligence, willful misconduct, fraud, or breach of fiduciary duty determined by a final order no longer subject to appeal, for all judgments, costs, and reasonable expenses including legal fees (which shall be paid under the indemnity after court approval as they arise), arising from or related to any and all claims of whatsoever type brought against any of them in their capacities as Special Master, Retained Personnel and agents acting at their direction; provided, however, that nothing herein shall limit the immunity of the Special Master, the Retained Personnel, and their respective agents allowed by law or deprive the Special Master, the Retained Personnel, and their respective agents of indemnity for any act or omission for which they have immunity.

20.     This Court shall retain jurisdiction over any action filed against the Special Master or Retained Personnel based upon acts or omissions committed in their representative capacities.

21.     In the event the Special Master decides to resign, the Special Master shall first give written notice to the Parties and the Court of his intention, and the resignation shall not be effective until the Court appoints a successor.  The Special Master shall then follow such

instructions as the Court may provide.

## VIII. Recommendations and Reports

22.     Within 30 days after the entry of this Order, the Special Master shall file and

serve a full report and accounting of the Special Reserve (the "First Status Report"), reflecting

(to the best of the Special Master's knowledge as of the period covered by the report) the value

of the Special Reserve and of the extent of liabilities, both those claimed to exist by others and

those the Special Master believes to be legal obligations of the Fund.  For good cause shown, the

Special Master may seek leave of Court to extend the time set for the filing of the First Status

Report.

23.     Subsequent to the filing of the First Status Report, the Special Master shall file a

quarterly status report (the "Quarterly Status Report"), which shall contain the information listed

in this Paragraph 23.  The Quarterly Status Report shall be filed within 20 days of the end of

each quarter, except that, the first Quarterly Status Report shall be filed upon the passing of the

first full quarter after the First Status Report is filed.  The Quarterly Status Report shall contain

the following:

A.     A summary of the operations of the Special Master consistent with Paragraph 2 of

this Order;

B.     The amount of the Special Reserve and the amount and nature of accrued

administrative expenses;

C.     A schedule of all the Special Master's receipts and disbursements (attached as

Exhibit A to the Quarterly Status Report), with one column for the quarterly

period covered and a second column for the entire duration of the Special Master;

D.     A list of all known creditors and the amount of their claims, redacted to exclude

personally identifiable information; and

E.       All information required by the First Status Report updated for the Quarterly

Status Report (to the extent not duplicative of <u>Paragraph 23.A-D</u> above), and any

other information that the Special Master reasonably deems appropriate to include

in the Quarterly Status Report.

24.       On the request of the Commission, the Special Master shall provide the

Commission with any documentation consistent with the Special Master's duties in this Order

that the Commission deems necessary to meet its reporting requirements, that is mandated by

statute or Congress, or that is otherwise necessary to further the Commission's mission.

## IX. Fees, Expenses and Accountings

25.       Subject to the specific provisions of this Order, the Special Master is authorized to

solicit persons and entities ("<u>Retained Personnel</u>") to assist the Special Master in carrying out the

duties and responsibilities described in this Order.  Except for Finn Dixon & Herling LLP ("<u>Finn</u>

<u>Dixon</u>"), which firm was previously retained by the SLC and shall be designated and approved

by the Court as Retained Counsel under this Order, the Special Master shall not engage any

Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

For the avoidance of doubt, the term "Retained Personnel" shall include counsel and any other

professionals retained by the Special Master pursuant to and in accordance with this <u>Paragraph</u>

<u>25</u>.

26.       Within twenty (20) days of entry of this Order, Finn Dixon shall file with the

Court a sworn declaration disclosing any and all material connections that it may have to this

case.  With respect to investors in the Fund, Finn Dixon is not required to disclose any

connections to any such investors to the extent revenue derived from such investor does not

exceed one percent (1%) of the net revenue of Finn Dixon.

27.     The Special Master, Retained Personnel, and the SLC and persons it has retained to assist the SLC (for purposes of this Paragraph 27, each a "Fee Applicant," and collectively, the "Fee Applicants"), are entitled to compensation in accordance with the following procedures (the "Compensation Procedures"):

A.     On or after the 21st day of each month following the month for which compensation is sought, each Fee Applicant seeking compensation may file an application (including the relevant time entry and description and expense detail, and attachment of time records in compliance with the Billing Instructions (defined below)) with the Court (each, a "Monthly Fee Statement") for interim allowance of compensation for services rendered and reimbursement of expenses incurred during the preceding month, and serve such Monthly Fee Statement by email to the Commission and the Trust (collectively, the "Fee Application Recipients").  Any Fee Applicant that fails to file a Monthly Fee Statement for a particular month or months may subsequently submit a Monthly Fee Statement that includes a request for compensation earned or expenses incurred during the previous months.

B.     Each Fee Application Recipient will have until 4:00 p.m. (prevailing Eastern Time) on the date that is 14 days after service of a Monthly Fee Statement to object to the requested fees and expenses in accordance with Paragraph 27.C below.  Upon the expiration of such 14-day period, the Special Master is authorized and directed to pay the Fee Applicant an amount (the "Actual Monthly Payment") equal to 80 percent of the fees and 100 percent of the expenses

requested in the applicable Monthly Fee Statement (the "<u>Maximum Monthly Payment</u>") that are not subject to an objection pursuant to <u>Paragraph 27.C</u> below.

C.    If any Fee Application Recipient objects to a Fee Applicant's Monthly Fee Statement, the objecting party shall, within 14 days of service of the Monthly Fee Statement, serve via email a written notice upon the respective Fee Applicant and each of the Fee Application Recipients (the "<u>Notice of Objection to Monthly Fee Statement</u>") setting forth the precise nature of the objection and the disputed amount at issue.  Thereafter, the objecting party and the Fee Applicant shall attempt to resolve the objection on a consensual basis.  If the parties reach an agreement, the Special Master shall promptly pay 80 percent of the agreed-upon fees and 100 percent of the agreed-upon expenses.  If, however, the parties are unable to reach a resolution of the objection within 14 days (or such longer period as mutually agreed to by the Fee Applicant and the objecting party) after service of the objection, the objecting party shall file its objection (the "<u>Fee Objection</u>") with the Court within three business days and serve such Fee Objection on the respective Fee Applicant and each of the Fee Application Recipients.  Thereafter, the Fee Applicant may either (i) file with the Court a response to the Fee Objection, together with a request for payment of the difference, if any, between the Maximum Monthly Payment and the Actual Monthly Payment made to the affected Fee Applicant (the "<u>Incremental Amount</u>") or (ii) forego payment of the Incremental Amount until the next hearing on an Interim Fee Application or Final Fee Application (each as defined below), at which time the Court will consider the Fee Objection, if requested by the parties.

D.     Each Fee Applicant may submit its first Monthly Fee Statement no earlier than
[          ] 21, 2022.  This initial Monthly Fee Statement will cover the period
from the date this Order is entered through [          ], 2022.[1]  Thereafter, the Fee
Applicants may file Monthly Fee Statements in the manner described above.

E.     Beginning with the period ending on [          ],[2] and at three-month intervals
thereafter (each an "Interim Fee Period"), each of the Fee Applicants may file
with the Court and serve on the Fee Application Recipients an interim fee
application (each an "Interim Fee Application") for compensation and
reimbursement of expenses sought in the Monthly Fee Statements served during
such period.   Each Fee Applicant shall serve notice of its Interim Fee Application
on the Fee Application Recipients.  The Fee Application Recipients and other
parties will have 21 days after service of an Interim Fee Application to object
thereto.  The first Interim Fee Application should cover the Interim Fee Period
from the date this Order is entered through and including [          ], 2022,[3] and
contain the information set forth in Paragraph 29 below.  As set forth in Paragraph
28 below, all Interim Fee Applications are subject to final allowance pursuant to
final applications to be filed with the Court at the conclusion of the Fee
Applicant's engagement and/or duties (each, a "Final Fee Application").

F.      The Special Master shall request that the Court set a hearing on Interim Fee
Applications at least once every three months or at such other intervals as the
Court deems appropriate.  The Court, in its discretion, may approve an

---

[1] NTD: the last day of the month in which the Order is entered.
[2] NTD: approx. the last day of the third month after which this Order is entered.
[3] NTD: approx. the last day of the third month after which this Order is entered

uncontested Interim Fee Application without the need for a hearing if no objections are timely filed thereto.  Upon allowance by the Court of a Fee Applicant's Interim Fee Application, the Special Master shall be authorized to promptly pay such Fee Applicant 80% of all requested and allowed fees and 100% of requested and allowed expenses to the extent, in each case, not previously paid pursuant to these Compensation Procedures; provided, however, that notwithstanding the foregoing, in the event requested by the Fee Applicant in the Interim Fee Application and approved by the Court, the Special Master shall be authorized to promptly pay such Fee Applicant up to half (50%) of all fees held back pursuant to the 20% fee holdback, with all remaining fee holdbacks to be considered for allowance by the Court in connection with the Fee Applicant's Final Fee Application.

G.    The pendency of an objection to payment of compensation or reimbursement of expenses will not disqualify a Fee Applicant from the future payment of compensation or reimbursement of expenses under the Compensation Procedures.

28.    Neither (a) the payment of nor the failure to pay, in whole or in part, monthly interim compensation and reimbursement of expenses under the Compensation Procedures nor (b) the filing of or failure to file an objection with the Court will bind any party in interest or the Court with respect to the final allowance of applications for compensation and reimbursement of expenses of the Fee Applicants.  All fees and expenses paid to Fee Applicants under the Compensation Procedures are subject to challenge and disgorgement until final allowance by the Court.

29.    Each Interim Fee Application and Final Fee Application shall:

A.   Except as provided in the Compensation Procedures and to the extent applicable based on the scope of the Fee Applicant's engagement or duties, comply with billing instructions that are substantially similar to those found at https://www.sec.gov/oiea/Article/billinginstructions.pdf. (the "Billing Instructions"); provided, however, that for the avoidance of doubt, the SLC and persons it has retained to assist the SLC shall not be required to submit the Commission's Standardized Fund Accounting Report (as defined in the Billing Instructions); and

B.   Contain representations (in addition to the certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Fund; and, (ii) with the exception of the Compensation Procedures and the Billing Instructions, the Fee Applicant has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Fund Assets, or any sharing thereof.

30.   At the close of this matter, the Special Master shall submit a final accounting, in a format to be provided by Commission staff, to the Court, the Commission and the Trust.

**SO ORDERED.**

Dated: New York, NY
    January 10 , 2022

_____
United States District Judge

21

## <u>EXHIBIT A</u>

## Indemnitees

The following is a non-exclusive list of parties who are contractually indemnified by the Fund:

- Current and former trustees of the Fund, including the series trustees of the Fund
- Current and former officers of the Fund
- Quasar Distributors, LLC
- U.S. Bancorp Fund Services, LLC

# EXHIBIT B

## Ancillary Proceedings

- *Oak Financial Group, Inc. v. Infinity Q Diversified Alpha Fund, et al.*, No. 1:21-cv-03249-FB-MMH (E.D.N.Y.)

- *Sherck v. U.S. Bancorp Fund Services, LLC*, No. 2022CV000846 (Wis. Cir. Ct.)