

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
100 PEARL STREET, SUITE 20-100
NEW YORK, NY 10004-2616

DIVISION OF
ENFORCEMENT

February 15, 2023

**Via ECF**
Honorable P. Kevin Castel
United States District Judge
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

      Re: *SEC v. Infinity Q Diversified Alpha Fund*, No. 22 Civ. 09608
      (PKC)/Response to Pre-Motion Letter by "Mutual Fund Opt-Out Plaintiffs"

Dear Judge Castel:

      The Securities and Exchange Commission ("SEC") submits this response to the February 9, 2023 pre-motion letter ("Pre-Motion Letter") by certain investors (the "Opt-Out Plaintiffs") in the Infinity Q Diversified Alpha Fund ("Mutual Fund") requesting leave for limited intervention to challenge the litigation injunction entered in this case with respect to certain persons and entities who are entitled to be indemnified by the Mutual Fund. Specifically, it appears that the Opt-Out Plaintiffs wish to continue to litigate actions against U.S. Bancorp Fund Services ("U.S. Bancorp"), the Mutual Fund's administrator, and Quasar Distributors, LLC ("Quasar"), underwriter for the Mutual Fund shares.[1] (Pre-Motion Letter at 3)

      The SEC believes that the law is well-established that the Court has the authority to enter the litigation injunction to preserve its jurisdiction over the Mutual Fund's limited assets for the benefit of the Mutual Fund's shareholders. Accordingly, the SEC requests that the Court deny the Opt-Out Plaintiffs' intervention request which seeks only

---

[1] The Opt-Out Plaintiffs also seek to lift the injunction with respect to EisnerAmper, LLP, the Mutual Fund's auditor. However, the litigation injunction only enjoins litigation against contractually indemnified parties listed on Exhibit A to the Consented to Order Appointing Special Master and Imposing Litigation Injunction ("Special Master Order," Dkt.#15), "that seeks a judgment or award that would be payable or subject to indemnification by the Fund." (Special Master Order at 12). The contractually indemnified parties listed on Exhibit A to the Special Master Order include current and former trustees of the Fund, including the series trustees of the Fund, current and former officers of the Fund, Quasar Distributors, LLC, and U.S. Bancorp Fund Services, LLC. The litigation injunction does not enjoin actions against persons and entities who are not contractually indemnified parties, such as EisnerAmper, LLP.

to challenge the Court's legitimate authority to enter the litigation injunction in aid of its jurisdiction over the Mutual Fund's limited assets.

The SEC sought the litigation injunction in this case to protect the Court's jurisdiction over the remaining assets in the Mutual Fund for the benefit of the Mutual Fund's shareholders. Currently, the remaining assets in the Mutual Fund consist of cash held in reserve (the "Special Reserve") which cannot be distributed until the claims against the Special Reserve are determined, at which time the Special Reserve can be reduced and the remaining Mutual Fund cash can be distributed to the Mutual Fund's shareholders. Accordingly, the Mutual Fund's assets comprise a "limited *res*" subject to this Court's equitable jurisdiction against which there are multiple, competing claims. The purpose of the litigation injunction is to centralize before the Court claims to the Mutual Fund's assets, including claims by the Opt-Out Plaintiffs and indemnity claims, in order expedite their resolution so that funds can be returned to harmed investors expeditiously.

**Preliminary Matters**

Before addressing the substance of the Pre-Motion Letter, the SEC believes it necessary to address two preliminary matters. The first matter is the Opt-Out Plaintiffs' allegations with respect to Andrew M. Calamari, the Special Master appointed on consent by the Court. The Opt-Out Plaintiffs allege that Mr. Calamari is conflicted "due to his ties to U.S. Bank," and that he failed to file the affidavit required by Federal Rule of Civil Procedure 53(b)(3) disclosing potential grounds for disqualification. (Pre-Motion Letter at 4-5) As set forth in the SEC's November 23, 2022 memorandum of law in support of its Motion on Consent of Defendant to Appoint a Special Master and Impose a Litigation Injunction ("Special Master Memorandum," Dkt.#11), on December 28, 2021, Mr. Calamari was appointed by the Mutual Fund's Board to serve as a member of the independent Special Litigation Committee ("SLC") for the purpose of investigating and pursuing claims on behalf of the Mutual Fund. (Special Master Memorandum at 10) Mr. Calamari was selected by non-interested members of the Mutual Fund's Board, as disclosed on the Infinity Q liquidation website. *See* https://www.infinityqfundliquidation.com/cases/q%20proposal/slc%20announcement.pdf .[2]

In addition, the Special Master Order (Dkt #15), required the Special Master's counsel (Finn Dixon & Herling LLP, of which Mr. Calamari is a member) to "file with the Court a sworn declaration disclosing any and all material connections that it may have to this case." Special Master Order at ¶ 26. On January 25, 2023 (Dkt.#19), Mr. Calamari filed a declaration disclosing that aside from his appointments as an independent Series Trustee of the Trust for Advised Portfolios and as a member of the independent SLC, neither he nor his firm has any other connections to this case. Accordingly, the SEC is not

---

[2] We understand that counsel to the Mutual Fund will be submitting a letter addressing factual inaccuracies made by the Opt-Out Plaintiffs concerning U.S. Bankcorp's role in the Mutual Fund's governance.

aware of any legitimate basis to seek Mr. Calamari's removal as Special Master in this case.[3]

The second matter is the Opt-Out Plaintiffs' allegation that "[n]either the SEC nor the Mutual Fund notified investors about the proposed Global Injunction." Pre-Motion Letter at 3. The SEC has no obligation to notify third parties in advance of seeking a litigation injunction in an SEC enforcement action that seeks to preserve the Court's jurisdiction over the property at issue. Nonetheless, as a matter of courtesy, the SEC did advise the plaintiffs in the only actions that were pending at the time the SEC filed the Complaint in this case of the proposed litigation injunction, and those plaintiffs advised the SEC that they did not object to the proposed injunction. (Special Master Memorandum at 1 n.1) The Opt-Out Plaintiffs did not file their actions until well after the SEC filed this action and the motion seeking entry of the litigation injunction and publicly issued a litigation release regarding the action. Accordingly, the SEC's action was publicized well before the Opt-Out Plaintiffs filed their actions.

**Merits Discussion**

As discussed above, the Mutual Fund has already been liquidated, and the purpose of appointing a Special Master is to administer a claims and distribution process to return funds to harmed investors. An essential element of that process is to determine claims against the Mutual Fund (including indemnification claims), so that the Special Reserve can be reduced and the remaining funds distributed to the Mutual Fund's shareholders. (Special Master Memorandum at 2, 3 & 9) The injunction serves the purpose of centralizing claims to the Mutual Fund's assets before the Court and ensuring that competing claims to the assets are resolved in an equitable manner.

The law is well established that the Court has the authority to enter the litigation injunction. "Once the equity jurisdiction of the district court has been properly invoked by a showing of a securities law violation, the court possesses the necessary power to fashion an appropriate remedy," and "it is for the federal courts to adjust their remedies so as to grant the necessary relief where federally secured rights are invaded." *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1103 (2d Cir. 1972). In addition to a court's inherent equitable authority, statutory authority under Exchange Act Section 21(d)(5) provides: "In any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors." 15 U.S.C. § 78u(d)(5).

In exercising its equitable jurisdiction over the limited *res*, the Court's imposition of a litigation injunction is appropriate to protect the Court's jurisdiction over the Mutual Fund's limited assets for the benefit of harmed investors. *See Reserve Fund Secs. &*

---

[3] The Opt-Out Plaintiffs also apparently find it relevant that Mr. Calamari was formerly the Director of the SEC's New York Regional Office. (Pre-Motion Letter at 2) Mr. Calamari left the SEC in October 2017, and this his first appointment as an SEC fiduciary since his departure over five years ago.

*Derivative Litig. V. Reserve Mgmt. Co.*, 673 F. Supp. 2d 182, 202-03 (S.D.N.Y. 2009) (court entered litigation injunction in connection with implementation of distribution plan recommended by the SEC for a mutual fund subject to the court's jurisdiction, as injunction was necessary to preserve the court's jurisdiction over a "limited res" and was authorized by the All Writs Act and Section 21(d)(5) of the Exchange Act, which allows the court to "grant any equitable relief that may be appropriate or necessary for the benefit of investors").

In the face of the well-established law that authorizes the Court to enter the litigation injunction, the Opt-Out Plaintiffs make three arguments as to why they believe the litigation injunction should be modified. First, they argue that they have independent claims against third parties, and that even if the third parties may have indemnification claims against the Mutual Fund, those claims will "not pose an immediate threat" to the Mutual Fund's liquidation. (Pre-Motion Letter at 3-4)

In support of this argument, the Opt-Out Plaintiffs also state that "it is doubtful that the Non-Party Violators have viable indemnification rights," citing to *Globus v Law Res. Serv., Inc.*, 418 F.2d 1276, 1288 (2d Cir. 1969) in which the Second Circuit held that it was against public policy to permit indemnification of an underwriter "where the underwriter has committed a sin graver than ordinary negligence." Here, however, the Opt-Out Plaintiffs' causes of action do **not** allege any scienter-based claims, only claims based in strict liability and perhaps negligence. In any event, even if none of the so-called Non-Party Violators were entitled to be indemnified if found liable for securities laws violations, it would be difficult to challenge their indemnification rights if they successfully defend the actions or are otherwise able to prove that they are not at fault. *E.g.*, *Credit Suisse First Boston, LLC v. Intershop Communs. AG*, 407 F. Supp. 2d 541, 549 (S.D.N.Y. 2006) ("[T]here appears to be no basis in statute or case law to support an argument that indemnification agreements are unenforceable when they compensate an underwriter for attorney's fees and other expenses incurred in successfully defending against a securities lawsuit.").[4] Until the claims against the Special Reserve are determined, no distributions can be made to the Mutual Fund's shareholders. Accordingly, the Opt-Out Plaintiffs' actions against indemnitees of the Mutual Fund have a direct and immediate impact on the Mutual Fund and its harmed investors.

Second, the Opt-Out Plaintiffs argue that the litigation injunction deprives them of their due process rights because it eliminates their right to exclude themselves from the class action and to prosecute their own claims against third parties. (Pre-Motion Letter at 4) They also contend that the litigation injunction essentially removes their actions to federal court in contravention of the anti-removal provisions of 15 U.S.C. § 77v(a). (Pre-Motion Letter at 4) However, the Court has the authority to enter the litigation injunction as being necessary to preserve the Court's jurisdiction over the limited fund for the benefit of the Mutual Fund's shareholders. *See Reserve Fund Secs. & Derivative Litig. v. Reserve Mgt. Co.*, 673 F. Supp. 2d 182, 203 at n. 51 (S.D.N.Y. 2009) (litigation

---

[4] Counsel to indemnitees have advised the Special Master that they estimate indemnifiable legal fees and expenses to be approximately $91 million. *See* Special Master's First Status Report, Dkt.#22 at 3.

injunction appropriately enjoined state law actions over which there was no federal jurisdiction that would have depleted the limited res "as part of the appropriate and necessary equitable relief" in the case). In addition, the Opt-Out Plaintiffs' actions are not being removed by the indemnitee-defendants to federal court. Rather, the Court is appropriately enjoining the actions in order to preserve its jurisdiction over the Mutual Fund's assets, and their monetary claims will be resolved through the claims and distribution plan process to be proposed by the Special Master pursuant to the Special Master Order. *See SEC v. Credit Bancorp, Ltd.*, 279 F. Supp. 2d 247, 260 n.4 (S.D.N.Y. 2003) ("summary proceedings have been held to satisfy the requirements of procedural due process in adjudicating claims of both parties and non-parties to assets held in a federal equity receivership.") (internal citations omitted) The Opt-Out Plaintiffs will be afforded the same opportunity to be heard in connection with the proposed claims and distribution plan process as any other Mutual Fund creditor and investor.

Finally, the Opt-Out Plaintiffs argue that the litigation injunction violates the Anti-Injunction Act [28 U.S.C. § 2283], claiming that the Opt-Out Plainiffs' state law causes of action are not *in rem* actions that seek to interfere with or obtain a judgment against the Special Reserve. (Pre-Motion Letter at 4) However, there is substantial authority that the Anti-Injunction Act does not apply to an injunction entered at the behest of the federal government. *Marshall v. Chase Manhattan Bank*, 558 F.2d 680, 683 (2d Cir. 1977) ("The general language of § 2283 was not intended to hamstring federal agencies in the utilization of federal courts to protect federal rights."); *SEC v. Wencke*, 577 F.2d 619, 623 (9th Cir. 1978) ("The district court had jurisdiction to enjoin the Nevada state court. Title 28 U.S.C. § 2283, which prohibits federal injunctions of state court actions in most circumstances, does not apply to injunctions issued at the request of the United States. This exception to the statute applies also when an administrative agency is enforcing applicable federal law.").

In addition, the law is well established that the Anti-Injunction Act does not apply to injunctions entered in aid of the Court's jurisdiction over a limited fund. The relevant inquiry is not whether the Opt-Out Plaintiffs' causes of action are themselves *in rem* actions – the relevant inquiry is whether the injunction is necessary to protect the *res* (or the limited fund) that is the subject of the Court's jurisdiction and which will be depleted as a result of the Opt-Out Plaintiffs causes of action. This exact issue was decided by the Court in the *Reserve Fund* case. *See Reserve Fund*, 673 F. Supp. 2d at 204 (injunction against indemnifiable claims for which the limited fund subject to the court's jurisdiction would be liable was "necessary in aid of [the court's] jurisdiction" and "is not barred by the Anti-Injunction Act.) (internal citations omitted). The Court, citing to *In re Baldwin-United Corp.*, 770 F.2d 328, 336 (2d Cir. 1985), held that "an injunction as to all claims against (1) Primary Fund assets . . . and (2) any of the Defendants and any of the Defendants' officers, directors, trustees, representatives, agents or employees to the extent that such claims are subject to indemnification by the Primary Fund, is part and parcel of the "appropriate or necessary" equitable relief this Court is authorized to grant. As such, it is also necessary and appropriate in aid of this Court's jurisdiction." *Id.* at 202-03 (internal citations omitted) Here, the litigation injunction is necessary to protect

the Court's jurisdiction over the limited assets of the Mutual Fund and is therefore not barred by the Anti-Injunction Act.

      For all of the foregoing reasons, the SEC believes that the law is settled that the litigation injunction is an appropriate exercise of the Court's equitable jurisdiction over the Mutual Fund's limited assets, and that there is no basis for removal of Mr. Calamari as Special Master. Accordingly, the SEC requests that the Court deny the Opt-Out Plaintiffs' request for limited intervention in this case.

                      Respectfully submitted,

                      /s/Neal Jacobson
                      Neal Jacobson

Cc: Lawrence M. Rolnick, Esq.
    (LRolnick@rksllp.com)
   Michael J. Hampson, Esq.
    (MHampson@rksllp.com)