**RKS**
ROLNICK KRAMER SADIGHI

Lawrence Rolnick
Partner

1251 Avenue of the Americas
New York, NY 10020
212.597.2838
lrolnick@rksllp.com

February 17, 2023

**VIA ECF**

The Honorable P. Kevin Castel
District Judge
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:   *SEC v. Infinity Q Diversified Alpha Fund*, No. 22 Civ. 09608 (PKC)

Dear Judge Castel:

We write on behalf of the Mutual Fund Opt-Out Plaintiffs to briefly reply to the February 15, 2023 letters of the U.S. Securities and Exchange Commission ("SEC") (ECF No. 26; the "SEC Letter") and Infinity Q Diversified Alpha Fund (the "Mutual Fund"), a series of Trust for Advised Portfolios ("TAP") (ECF No. 29; the "Mutual Fund Letter") in response to the Mutual Fund Opt-Out Plaintiffs' Pre-Motion Letter (ECF No. 23) in the above-captioned action (the "Action").[1] Neither the SEC Letter nor the Mutual Fund Letter provide any basis to deny the Mutual Fund Opt-Out Plaintiffs' request to file a motion for limited intervention to modify the Consented to Order Appointing Special Master and Imposing Litigation Injunction (ECF No. 15; the "Global Injunction").

This is an extraordinary situation. Although the SEC was created by Congress to effectuate statutes passed for investor protection, here it attempts to *prevent* injured investors from bringing claims against those who violated the securities laws and to protect defendants who have engaged in securities fraud. The SEC is acting contrary to—and far outside—its statutory mandate by (i) allowing claims to be prosecuted through a class action but enjoining the claims of those who opt out and (ii) allowing claims under the Securities Act of 1933 (the "'33 Act") to proceed against the Mutual Fund's auditor, but not U.S. Bancorp Fund Services LLC ("U.S. Bancorp") and its affiliates.

**The Mutual Fund, TAP, and U.S. Bank**. While purportedly trumpeting its independence, the Mutual Fund's Letter carries the water for U.S. Bank and tries to distance U.S. Bank from any liability for the multiseries trust that it created and sponsors. That is no surprise, because U.S.

---

[1] The Mutual Fund Opt-Out Plaintiffs are more than one hundred injured investors in the Mutual Fund and are identified at ECF No. 23-1.

Bank effectively controls the Mutual Fund. The Chairman of the Mutual Fund's Board—Christopher E. Kashmerick—is a Senior Vice President of U.S. Bancorp.[2] Kashmerick is also the Mutual Fund's President and Principal Executive Officer. The Mutual Fund's other executive officers are all U.S. Bancorp employees. (Mutual Fund Annual Report at 50.) The Mutual Fund's custodian is U.S. Bank, N.A., and its transfer agent, fund accountant, and fund administrator is U.S. Bancorp. (*Id.* at 44.) The Mutual Fund's underwriter, Quasar Distributors LLC ("Quasar"), was, at the relevant time, a U.S. Bancorp affiliate.[3] TAP's Valuation Committee—which should have prevented the collapse of the Mutual Fund if it had been doing its job—consisted solely of U.S. Bancorp employees, rather than "independent" Trustees. (*Id.* at 25.) The Mutual Fund's attempt to distance itself from U.S. Bank therefore rings hollow.

The SEC and the Mutual Fund also attempt to defend the Special Master's independence. But the Special Master was the former Director of the SEC's New York Office, and, in that role, supervised all of the SEC attorneys who later investigated the Mutual Fund. During that investigation, he was appointed as the sole member of the Mutual Fund's special litigation committee to investigate potential claims that the Mutual Fund may have against, among others, Kashmerick, U.S. Bancorp, and Quasar. TAP then appointed Kashmerick—a U.S. Bancorp executive—to, "in his sole discretion," "negotiate, approve, and make" a settlement with the SEC on behalf of the Mutual Fund. (ECF No. 6 at 9.) As part of that settlement, the Mutual Fund agreed to the appointment of the Special Master. Thus, Kashmerick delivered to the Special Master that role, while at the same time the Special Master is supposed to be investigating potential claims against Kashmerick and U.S. Bancorp on the Mutual Fund's behalf. Indeed, as his first act in this role, the Special Master has earmarked an astounding $91 million—nearly 16% of the investors' remaining funds—for paying legal fees, including those of his own law firm, among others. (SEC Letter at 4 n.4.) Mutual Fund investors deserve an independent special master who is not wearing multiple hats, and is not hopelessly entangled with U.S. Bank and its affiliates.

***Notice and Opportunity to Be Heard***. Both the SEC and the Mutual Fund Letters go to great effort to defend their failure to provide adequate notice to shareholders that the SEC and the Mutual Fund were seeking to enjoin all shareholder suits (except the class action), including against third parties. (SEC Letter at 3; Mutual Fund Letter at 3.) But the bottom line is that the Mutual Fund's statement about the SEC settlement did not discuss a potential litigation injunction, and merely linked to a proposed judgment mentioning a litigation injunction, without providing any details, such as that the injunction would allow the class action to go forward and apply only to opt-outs.[4] Likewise, the SEC's public release about this case said nothing about seeking a litigation injunction.[5] And, even setting aside notice, shareholders were not provided an opportunity to be heard before the Global Injunction issued. There were no exigent circumstances here—

---

[2] Infinity Q Diversified Alpha Fund Annual Report to Shareholders, dated November 6, 2020, filed on Form N-CSR ("Mutual Fund Annual Report"), at 49.

[3] Infinity Q Diversified Alpha Fund Prospectus, filed on Form N-1A on December 20, 2019 ("Mutual Fund Prospectus"), at 30.

[4] *See* Infinity Q Diversified Alpha Fund Statement Regarding SEC Settlement (Nov. 10, 2022).

[5] *See* SEC Litig. Rel. No. 25575 (Nov. 10, 2002).

redemptions from the Mutual Fund had been suspended since February 2021, and the Mutual Fund's securities had already been liquidated—to justify lack of notice and a hearing.

***The Global Injunction Should Be Modified***.  The SEC asserts that the Mutual Fund Opt-Out Plaintiffs' "actions against the indemnitees of the Mutual Fund have a direct and immediate impact on the Mutual Fund" because "[u]ntil the claims against the Special Reserve are determined, no distributions can be made to the Mutual Fund's shareholders."  (SEC Letter at 4.)  But the SEC cites no authority whatsoever for why it must await potential indemnification claims against the Mutual Fund before distributing the Special Reserve.  Indeed, that position flies in the face of the SEC's own policy on indemnification under the '33 Act, which the SEC simply ignores.  *See* 17 C.F.R. § 229.510 ("Insofar as indemnification for liabilities arising under the Securities Act of 1933 may be permitted . . . in the opinion of the Securities and Exchange Commission such indemnification is against public policy as expressed in the Act and is therefore unenforceable."). Moreover, although the SEC concedes that the Global Injunction must be "for the benefit of investors," 15 U.S.C. § 78u(d)(5) (SEC Letter at 3), it does not explain why it is prioritizing indemnitees of the Mutual Fund—who have violated the '33 Act and who failed to discharge their duties to oversee the Mutual Fund—over investors in the Mutual Fund.

The SEC asserts that the Mutual Fund Opt-Out Plaintiffs "will be afforded the same opportunity to be heard in connection with the proposed claims and distribution plan process as any other Mutual Fund . . . investor."  (SEC Letter at 5.)  This argument misses the point because the Global Injunction does not apply to the class action.  Thus, the Mutual Fund Opt-Out Plaintiffs are being treated differently, including by having their constitutional right to prosecute their opt-out claims violated by the Global Injunction.  The SEC does not explain why the class action, which has reached a proposed settlement to be funded, in part, out of TAP's insurance, is getting a preference over other plaintiffs.  U.S. Bancorp's meager contribution to that proposed settlement, and the fact that it and its affiliates will receive classwide releases undoubtedly provides the answer.

Finally, the SEC claims that it is exempt from the Anti-Injunction Act, 28 U.S.C. § 2283, and that, in any event, the in-aid-of-jurisdiction exception to the Act applies.  (SEC Letter at 5.)  But to avoid the Anti-Injunction Act, the SEC must show that it has "superior federal interests" to the Mutual Fund Opt-Out Plaintiffs' state-court actions.  *Mitchum v. Foster*, 407 U.S. 225, 235-36 (1972).  The SEC cannot do so, including because (i) the Global Injunction was a joint effort between the SEC and the Mutual Fund; (ii) a judgment has already been entered in this Action against the Mutual Fund, resolving the SEC's claims; (iii) federal securities laws do not preempt the field, *compare Marshall v. Chase Manhattan Bank*, 558 F.2d 680, 683 (2d Cir. 1977) (SEC Letter at 5) (ERISA intended to "regulate the field of employee benefit plans"); and (iv) the Mutual Fund Opt-Out Plaintiffs' state-court claims are brought under the '33 Act, which provides for concurrent state-court jurisdiction and prohibits removal, *see* 15 U.S.C § 77v(a).

As to the in-aid-of-jurisdiction exception, the SEC (and its sole authority, *In re Reserve Fund Securities & Derivative Litigation*, 673 F. Supp. 2d 182, 204 (S.D.N.Y. 2009), which is not binding on this Court) (SEC Letter at 5) ignores that the Supreme Court has made clear that a state-court lawsuit seeking a money judgment, such as the Mutual Fund Opt-Out Plaintiffs' state-court actions, does not interfere with the jurisdiction of a federal court that has taken authority over specific property, such as the Special Reserve.  *See Vendo Co. v. Lektro-Vend Corp.,* 433 U.S. 623,

642 (1977) (plurality opinion); *Kline v. Burke Constr. Co.*, 260 U.S. 226, 230 (1922); *Wyly v. Weiss*, 697 F.3d 131, 138 (2d Cir. 2012) ("The Supreme Court has never held that a district court may enjoin a parallel *in personam* action under the 'in aid of jurisdiction' exception."). The circumstances of *In re Baldwin United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985), on which *Reserve Fund* relied, *see* 673 F. Supp. 2d at 203-04—a collateral attack on an imminent global settlement of a multi-district litigation—bear no resemblance to those here. *See United States v. Schurkman*, 728 F.3d 129, 138 (2d Cir. 2013) ("declin[ing] to extend the holding of *Baldwin-United* beyond the exceptional circumstances of that case"); *Wyly*, 697 F.3d at 139 ("We have never held that a district court's involvement in complex litigation justifies, without more, issuance of an injunction 'in aid of' the court's jurisdiction, and we decline to create such a rule here.").

\* \* \*

The Mutual Fund Opt-Out Plaintiffs thus respectfully believe that the Global Injunction is impermissibly broad in sweep and impacts the rights of litigants who never had an opportunity to be heard, and therefore respectfully request that the Court permit them to file their motion for limited intervention to modify the Global Injunction, on the briefing schedule proposed in the Mutual Fund Opt-Out Plaintiffs' Pre-Motion Letter (ECF No. 23 at 5).

We appreciate the Court's attention to this matter.

Respectfully submitted,

Lawrence Rolnick

cc: All counsel of record (via ECF)