

Lawrence Rolnick
Partner

1251 Avenue of the Americas
New York, NY 10020
212.597.2838
lrolnick@rksllp.com

February 9, 2023

**VIA ECF**

The Honorable P. Kevin Castel
District Judge
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

> The Mutual Fund Opt Outs may file their motion by February 28, 2023. Any party, including the SEC and the Receiver may respond 14 days after filing. The Mutual Fund Opt Outs may reply 7 days thereafter. SO ORDERED.
> Dated: 2/23/2023
>
> *P. Kevin Castel*
> P. Kevin Castel
> United States District Judge

Re:   *SEC v. Infinity Q Diversified Alpha Fund*, No. 22 Civ. 09608 (PKC)

Dear Judge Castel:

OK

We write on behalf of more than one hundred injured investors (the "Mutual Fund Opt-Out Plaintiffs") in the Infinity Q Diversified Alpha Fund (the "Mutual Fund") to request permission to file [a motion for limited intervention to modify the Consented to Order Appointing Special Master and Imposing Litigation Injunction] (ECF No. 15; the "Global Injunction") entered on January 10, 2023 in the above-captioned action (the "Action").[1]  There are no scheduled Court conferences in the Action.

As shown below, the Global Injunction is impermissibly broad, infringes the Mutual Fund Opt-Out Plaintiffs' due process rights, and violates the Anti-Injunction Act, 22 U.S.C. § 2283.  Thus, this Court should permit the Mutual Fund Opt-Out Plaintiffs to intervene for the limited purpose of (i) narrowing the Global Injunction (at least as to the Mutual Fund Opt-Out Plaintiffs) and (ii) vacating the Global Injunction's appointment of Andrew Calamari as Special Master because he failed to file the affidavit required by Federal Rule of Civil Procedure 53(b)(3) and is conflicted due to his ties to U.S. Bank.

**Background**

The Mutual Fund was launched to give investors access to the investment strategies that billionaire David Bonderman used to manage his wealth.  The Mutual Fund's investment advisor is Infinity Q Capital Management ("Infinity Q").  Mutual funds are heavily regulated for the protection of ordinary investors, and Infinity Q did not have the regulatory expertise or administrative infrastructure to run one.  To provide such services, U.S. Bank has created a one-stop-shop for investment managers to create a mutual fund.  For a fee, U.S. Bank creates new "series" of its existing trusts to allow unaffiliated investment managers—such as Infinity Q—to launch a mutual

---

[1] The Mutual Fund Opt-Out Plaintiffs are identified on Exhibit A hereto.

fund.  U.S. Bank, through its agents, manages all operations, governance, servicing, and administration of the mutual fund, while the investment manager develops and implements the investment strategy.

The Mutual Fund was created as a series of a U.S. Bank-sponsored multiple series trust called the Trust for Advised Portfolios ("TAP").  U.S. Bank's affiliate, U.S. Bancorp Fund Services, LLC ("U.S. Bancorp"), is TAP's administrator and is thus responsible for TAP's management and oversight, which includes appointing its Board of Trustees and executive officers (who are all U.S. Bancorp employees).   U.S. Bancorp also selected TAP's auditor, EisnerAmper LLP ("EisnerAmper"), as well as its underwriter, Quasar Distributors, LLC ("Quasar"), a U.S. Bancorp-affiliate.

In February 2021, investors were stunned to learn that redemptions in the Mutual Fund had been suddenly suspended and its assets were to be promptly liquidated because Infinity Q had been manipulating the valuation of the Mutual Fund's assets.  Although investors were told that the Mutual Fund's assets were worth approximately $1.8 billion, the liquidation produced only $1.3 billion, leaving a shortfall of approximately half a billion dollars.  U.S. Bank and its agents were responsible for oversight of the Mutual Fund's valuations and regulatory compliance.  But these actors abdicated their responsibilities and permitted Infinity Q to manipulate asset valuations by hundreds of millions of dollars.  If they had been duly performing their duties, Infinity Q would not have been able to manipulate the valuations and investors would not have suffered massive losses.

Rather than immediately distribute the Mutual Fund's liquidated proceeds to investors, U.S. Bank sought to minimize its legal exposure.  The SEC's New York Regional Office had been investigating the Mutual Fund since 2020.  In December 2021, U.S. Bank appointed the former Director of that office, Andrew Calamari, as a new Trustee of TAP.  The Mutual Fund then formed a special litigation committee ("SLC") to investigate the Mutual Fund's potential claims.  Mr. Calamari was appointed as the sole member of the SLC. (Another member was appointed in March 2022.)  U.S. Bank thereafter made two distributions to investors from the $1.3 billion the Mutual Fund had from liquidating its positions.  The remaining $500 million was then moved to a "Special Reserve" against future and potential liabilities.

Several putative securities class actions were filed against Infinity Q, TAP, U.S. Bancorp, TAP's officers and trustees, EisnerAmper, and Quasar in both state and federal court.  None of these actions proceeded past the motion to dismiss stage.  In the late summer of 2022, the parties to the state and federal court class actions brought in New York announced a proposed settlement that would resolve all federal securities claims against all potential defendants, including U.S. Bank and its agents.  The parties sought approval of the settlement in New York state court.

Under the terms of the proposed settlement, the defendants would collectively pay $39.75 million, plus an additional $8.25 million if certain conditions are met.  Of this amount, TAP, its trustees, and its officers, are paying only $4.6 million and U.S. Bancorp is paying only *$250,000*.  Class counsel is seeking an award of one-third of the settlement amount, plus reimbursement of expenses.  Thus, the total return to investors could be less than $25 million.  This recovery represents only 2%-3%, at best, of investors' collective losses.  Even if investors receive settlement

Hon. P. Kevin Castel | Page 3
February 9, 2023

payments, and a distribution of the remaining Special Reserve, they will be left short by about half a billion dollars.

Although the Mutual Fund itself does not have assets beyond the Special Reserve, the purported gatekeepers of the Mutual Funds—U.S. Bank and its agents—have significant assets. But the Mutual Fund, through U.S. Bank, took steps to keep investors from bringing claims against those assets. On November 10, 2022—shortly after the class action settlement was preliminarily approved—the SEC settled with the Mutual Fund. Under that settlement, the SEC and the Mutual Fund asked this Court to approve the Global Injunction, which appointed Mr. Calamari as Special Master and tasked him with administering the return of the Special Reserve to investors. The Global Injunction also imposed a litigation injunction, indefinitely staying all present and future litigation against any of the defendants released by the class action settlement (except for the class action itself, which is not subject to any injunction). Neither the SEC nor the Mutual Fund notified investors about the proposed Global Injunction, and the Global Injunction did not contain any procedures for Mutual Fund investors to object to its entry or otherwise be heard. This Court entered the Global Injunction on January 10, 2023. (ECF No. 15.)

In December 2022, the Mutual Fund Opt-Out Plaintiffs sent notices of exclusion to the class settlement administrator and then filed their own actions in state court under the Securities Act of 1933 (the "'33 Act"). The complaints allege violations of Sections 11, 12 and 15 of the '33 Act. On January 10, 2023, counsel for U.S. Bank e-mailed counsel for the Mutual Fund Opt-Out Plaintiffs to notify them of the Global Injunction.

**Argument**

The Mutual Fund Opt-Out Plaintiffs seek the Court's permission to file a motion for limited intervention to challenge the Global Injunction.[2] The Global Injunction is overbroad because it bars the Mutual Fund Opt-Out Plaintiffs' claims against parties other than the Mutual Fund and TAP, who have independent liability under the '33 Act. In addition, the Global Injunction violates the Mutual Fund Opt-Out Plaintiffs' due process rights under the Fourteenth Amendment and the Anti-Injunction Act, 28 U.S.C. § 2283. The Court should also vacate the appointment of Mr. Calamari as Special Master, given his ties to U.S. Bank and the multiple roles in which he purports to serve here.

*First*, the Global Injunction should be narrowed to stay claims only against the Mutual Fund and TAP, and to permit the Mutual Fund Opt-Out Plaintiffs' '33 Act claims against, among others, U.S. Bancorp, EisnerAmper, and Quasar (the "Non-Party Violators") to proceed. The '33 Act provides for *independent* claims against these Non-Party violators. The very purpose of this joint-and-several liability is so that injured investors may recover fully from solvent third parties if the

---

[2] Limited intervention is warranted here under either Federal Rule of Civil Procedure 24(a)(2) or 24(b). Because the Mutual Fund Opt-Out Plaintiffs seek to intervene only for the limited purpose explained herein, they do not propose to file a "pleading" pursuant to Rule 24(c). Where, as here, "the position of the movant is apparent from other filings and where the opposing party will not be prejudiced, Rule 24(c) permits a degree of flexibility with technical requirements." *Tachiona ex rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 393 n.8 (S.D.N.Y. 2002).

issuer becomes insolvent. Thus, the Mutual Fund Opt-Out Plaintiffs have the right to adjudicate their claims against the Non-Party Violators, even if the Mutual Fund is liquidating and distributing all remaining assets. The inclusion of the Non-Party Violators within the scope of the Global Injunction was based on supposed future indemnification claims against the Mutual Fund. But the Mutual Fund is liquidating over the next several months, and any indemnification claims do not pose an immediate threat to that process. Moreover, it is doubtful that the Non-Party Violators have viable indemnification rights. The SEC itself views indemnification agreements for '33 Act violations as "unenforceable" and "against" public policy." 17 C.F.R. § 229.510. Courts agree. *See, e.g.*, *Globus v. Law Res. Serv., Inc.*, 418 F.2d 1276, 1288 (2d Cir. 1969). Thus, the breadth of the Global Injunction is not "appropriate or necessary for the benefit of investors," 15 U.S.C. § 78u(d)(5), and should be substantially narrowed.

*Second*, the Global Injunction violates the Mutual Fund Opt-Out Plaintiffs' due process rights because it substantively eliminates their right to exclude themselves from the class action settlement. "Absent class members," such as the Mutual Fund Opt-Out Plaintiffs, "have a due process right . . . to opt out of class litigation" and to independently prosecute their own claims for money damages. *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 222 (2d Cir. 2012). Here, although the class action settlement provides for a nominal opt-out right, when combined with the Global Injunction, that right is illusory. The Global Injunction prevents those class members who opt out of the class action settlement from prosecuting their claims. It thereby imposes a substantial burden of the right to opt out that violates due process. *See, e.g.*, *Jiannaras v. Alfant*, 27 N.Y.3d 349, 352 (2016) ("Opt-out rights ensure that class members will have option of pursuing individual actions for redress."). Moreover, the Global Injunction effectively removes the Mutual Fund Opt-Out Plaintiffs' state court actions to federal court, which contravenes the anti-removal provision of 15 U.S.C. § 77v(a) and the Supreme Court's decision in *Cyan, Inc. v. Beaver County Employees Retirement Fund*, 138 S. Ct. 1061 (2018).

*Third*, the Global Injunction as applied to the Mutual Fund Opt-Out Plaintiffs' state court actions violates the Anti-Injunction Act, 28 U.S.C. § 2283. Subject to three very narrow exceptions—none of which apply here—the Anti-Injunction Act prohibits a federal court from enjoining a state court proceeding. Here, Congress provided the state courts with concurrent jurisdiction over '33 Act claims, those claims cannot be removed, and the Anti-Injunction Act prohibits this Court from enjoining such claims. In particular, the Mutual Fund Opt-Out Plaintiffs' state court actions are not *in rem* proceedings and do not seek to interfere with, or obtain a judgment against, the Special Reserve over which this Court and the Special Master have taken jurisdiction. In these circumstances, an injunction against the state courts actions would not be in aid of this Court's jurisdiction. *See Kline v. Burke Constr. Co.*, 260 U.S. 226, 230 (1922) ("[A] controversy is not a thing, and a controversy over a mere question of personal liability does not involve the possession or control of a thing, and an action brought to enforce such a liability does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending."); *Wyly v. Weiss*, 697 F.3d 131, 138 (2d Cir. 2012) ("The Supreme Court has never held that a district court may enjoin a parallel *in personam* action under the 'in aid of jurisdiction' exception.").

In addition to modifying the stay provided by the Global Injunction, the Court should vacate the appointment of Mr. Calamari as Special Master. Mr. Calamari failed to file the affidavit required by Federal Rule of Civil Procedure 53(b)(3) disclosing potential grounds for disqualification and,

Hon. P. Kevin Castel                                                                                                            Page 5
February 9, 2023

in fact, is conflicted due to his ties to U.S. Bank. U.S. Bank has substantial liability to injured investors, is a defendant in their opt-out suits, and should not directly or indirectly determine the distribution of the Mutual Fund's remaining assets.

* * *

The Mutual Fund Opt-Out Plaintiffs would propose the following briefing schedule:

- Mutual Fund Opt-Out Plaintiffs' opening brief in support of their motion for limited intervention and to modify the Global Injunction: 2 days after the Court permits leave.
- The Mutual Fund and the SEC's opposition(s) (if any): 10 days after the Mutual Fund Opt-Out Plaintiffs' opening brief.
- Mutual Fund Opt-Out Plaintiffs' reply brief: 5 days after the Mutual Fund and SEC's opposition(s).

We appreciate the Court's attention to this matter.

Respectfully submitted,

Lawrence Rolnick

cc: All counsel of record (via ECF)