

ATTORNEYS AT LAW

Andrew M. Calamari
(203) 325-5057
acalamari@fdh.com

March 29, 2023

Hon. P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

**Re:**     <u>*SEC v. Infinity Q Diversified Alpha Fund*, 22 Civ. 9608 (PKC)</u>

Dear Judge Castel:

By order dated January 10, 2023, as amended on March 10, 2023 (the "Amended Order"),[1] Your Honor appointed me to serve as Special Master to oversee and manage the Special Reserve established by defendant Infinity Q Diversified Alpha Fund (the "Fund"). Paragraph 2(E) of the Amended Order provides that "the Special Master shall not make any payments or transfers of property on account of any debt or obligation incurred prior to the entry of this order, without prior order of the Court."  I respectfully submit this letter seeking the Court's authorization to pay various debts and obligations totaling **$1,027,201.70** that the Fund incurred prior to my appointment on January 10, 2023.

As detailed further below, the outstanding debts and obligations of the Fund fall into five categories:

1)  Invoices from Fund service providers;

2)  Invoices from counsel for the Trust for Advised Portfolios ("TAP"), the multiple series trust of which the Fund was a series;

3)  Invoices from counsel for certain "Indemnitees," which, as set forth in Exhibit A to the Amended Order, include current and former TAP trustees; current and former TAP officers; the Fund's distributor, Quasar Distributors ("Quasar"); and the Fund's administrator and accountant, U.S. Bancorp Fund Services, LLC ("USBFS");

---

[1] *See* Amended Consented To Order Appointing Special Master and Imposing Litigation Injunction, *SEC v. Infinity Q Diversified Alpha Fund*, 22 Civ. 9608 (PKC) (S.D.N.Y. Mar. 10, 2023) (ECF 38).

Hon. P. Kevin Castel
March 29, 2023
Page 2

    4)   Invoices for fees incurred by John Siciliano and myself, each a Series Trustee of TAP and member of the Special Litigation Committee ("SLC") established by TAP's Board of Trustees; and

    5)   Invoices from counsel to the SLC, which is Finn Dixon & Herling LLP.[2]

The services for which payment approval is sought relate to the period of time prior to entry of the initial order on January 10, 2023, with the exception of certain January invoices from service providers that include both pre- and post- January 10, 2023 expenses.

## A.  Fund Service Providers

Invoices outstanding from service providers total **$94,394.38**. From my review and discussion with the fund administrator, these are all ordinary-course expenses, with the exception of Cornerstone, which is providing litigation-related services to the Fund:

| Service Provider | Amount | Services |
|---|---|---|
| Cornerstone | $ 8,632.00 | Analysis for litigation-December |
| Cornerstone | 4,741.00 | Analysis for litigation-December |
| Cornerstone | 5,949.00 | Analysis for litigation-November |
| Cornerstone | 59,861.00 | Analysis for litigation-January[3] |
| NFS | 83.33 | December invoice |
| NFS | 3.00 | December invoice |
| NFS | 83.30 | January invoice |
| NFS | 3.00 | January invoice |
| Pershing | 8,389.50 | December invoice |
| Pershing | 68.01 | December invoice |
| RBC | 5.58 | December invoice |
| RBC | 4.77 | January invoice |
| Stretto | 500.00 | Website maintenance-Nov. and Dec. |
| US Bancorp | 2,005.00 | Fund administration |
| US Bancorp | 1,619.23 | Fund Administration |
| UBS | 1,221.33 | December invoice |
| UBS | 1,225.33 | January invoice |

The invoices are attached in Appendix A.

Based on my review, the invoices are valid and good faith obligations of the Fund.

---

[2] With respect to fees incurred by the SLC and its counsel going forward, I understand that the procedures outlined in paragraph 27 of the Amended Order shall apply.

[3] Much of this invoice relates to analysis of the of the implications of certain opt-out claims. In addition, Cornerstone did some analysis that I requested to assist my evaluation of potential distribution methodologies.

Hon. P. Kevin Castel
March 29, 2023
Page 3

**B.  TAP's Counsel Fees**

Morgan, Lewis & Bockius LLP ("Morgan Lewis") represents TAP, certain of its officers, and certain of its trustees in connection with one or more of the matters identified below.  Its outstanding invoices total **$320,044.49** for services rendered in November and December 2022 and January 1-9, 2023, and for invoices from March and May 2022 that were submitted to the Fund's insurer but not reimbursed:

| | |
|---|---:|
| Securities Litigation | $104,364.42 |
| Books and Records Demands | 6,633.90 |
| Fund Liquidation | 29,412.40 |
| SLC Matters | 15,446.25 |
| Government Investigations | 83,015.95 |
| Insurance Recovery | 24,227.40 |
| Derivative Action | 3,359.62 |
| | |
| Previously submitted to Fund insurer but not reimbursed | $53,584.55 |

The invoices are attached in Appendix B.[4]

With some immaterial exceptions, all of the work that Morgan Lewis performed for TAP's officers and trustees, who are Indemnitees, was subsumed in work that was otherwise necessary to TAP's own defense.  Consequently, at this time, there is no need to distinguish between services performed for TAP and those performed for Indemnitees represented by Morgan Lewis. The invoices are in my view valid and good faith obligations of the Fund.

**C.  Indemnitee Counsel Fees**

Vedder Price P.C. represents current and former TAP officers (one of whom is also the interested TAP trustee).  I understand that there are no outstanding invoices from Vedder Price for services performed for TAP officers or the interested trustee prior to entry of the initial Order on January 10, 2023.  Vedder Price also represents USBFS.  USBFS, however, is not entitled to advancement of its legal fees under its agreements with the Fund, and Vedder Price has not submitted any invoices to the Fund for services performed for USBFS.

Duane Morris LLP represents certain current and former independent trustees of TAP. Duane Morris has outstanding invoices totaling $1,693,286.99, which comprise (i) $272,862.20 in fees for services performed in December 2022 and January 1-9, 2023; and (ii) $1,420,424.79 in fees for services performed prior to December 2022, which were submitted to the Fund's insurer but not reimbursed (the "Prior Period Invoices").  Included among the Prior Period Invoices are 18 invoices dating between June 29, 2022 and September 29, 2022 totaling

---

[4] Appendix B does not include the invoices previously submitted to insurers, which are listed in the December 2022 invoice.  Copies of the underlying invoices will be provided to the Court upon request.

Hon. P. Kevin Castel
March 29, 2023
Page 4

$527,517.79 that the Fund has no record of having received contemporaneously.  The following is a breakdown of Duane Morris' outstanding invoices by time period and matter:

Fees Incurred in December 2022 and January 1-9, 2023:

| | |
|---|---:|
| Class Action (December 2022) | $19,291.28 |
| Class Action (January 1-9, 2023) | 8,907.80 |
| Opt-Out Litigation (December 2022) | 5,942.00 |
| Opt-Out Litigation (December 2022) | 5,222.50 |
| Opt-Out Litigation (December 2022) | 6,631.00 |
| Opt-Out Litigation (January 1-9, 2023) | 6,282.50 |
| Opt-Out Litigation (January 1-9, 2023) | 6,357.50 |
| SLC Related (December 2022) | 201,650.68 |
| SLC Related (January 1-9, 2023) | 6,433.04 |
| Derivative Action (December 2022) | 6,143.90 |
| Subtotal: | $272,862.20 |

Prior Period Invoices:

| | |
|---|---:|
| Corporate Advice (January 2022) | $34,446.00 |
| Class Action (4/21-12/22) | 195,974.64 |
| SLC Matters (3/22-12/22) | 399,953.34 |
| Derivative Action (3/22-11/22) | 38,689.45 |
| SEC Investigation (4/21-12/22) | 740,075.26 |
| Securities Litigation (7/21-11/22) | 7,365.55 |
| Securities Litigation (3/22, 5/22, 11/22) | 3,920.55 |
| Subtotal: | $1,420,424.79 |

The invoices are attached as Appendix C-1.[5]

        In evaluating whether to recommend payment of these invoices, I considered whether these Indemnitees were entitled to advancement of legal fees under the TAP Declaration of Trust (the "Declaration") and the Investment Company Act of 1940 (the "Act") at the time that advancement was sought.  The Declaration and the Act require that Indemnitees provide undertakings to repay the Fund for advanced amounts if they are ultimately determined to have committed disabling conduct, as defined in the Declaration and the Act.  These Indemnitees provided the required undertakings.  In addition, the Declaration and Act require that one of several alternate conditions be satisfied before advancement may be awarded.  One such condition is that there is adequate insurance to secure the Indemnitees' obligation to repay amounts advanced should the Indemnitees ultimately be found to have committed disabling conduct.

---

[5] Appendix C-1 does not include the Prior Period Invoices, which are listed in the December 2022 invoice.  Copies of those invoices will be provided to the Court upon request.

Hon. P. Kevin Castel
March 29, 2023
Page 5

Although the Fund did have sufficient insurance coverage prior to the proposed class action settlement, the policy was exhausted by October 25, 2022. Moreover, since August 17, 2022 (the date on which the Fund agreed to permit $4.6 million in insurance proceeds to be used to fund the proposed class action settlement) the amount of insurance available to secure advances for these Indemnitees' legal fees was insufficient. On January 8, 2023, the insurer formally notified Fund counsel that the policy limits were exhausted.

Thus, as a technical matter, the Fund could have advised these Indemnitees that their advancement rights would be suspended as of August 17, 2022, subject to the Indemnitees providing other security or meeting another condition for advancement set forth in the Declaration and the Act. Alternatively, the Fund might have suspended these Indemnitees' advancement rights on October 25, 2022, when the policy was in fact exhausted, or on January 8, 2023, upon receiving notice from the insurer that the policy was exhausted. The Fund did not provide Indemnitees with such a notice at any time.

Prior Period Invoices actually submitted to the Fund prior to September 2022 total $403,117.32.[6] Because these invoices were incurred at a time when all conditions for advancement were met, they are valid and good faith obligations of the Fund and should be paid. I have discussed this matter with Duane Morris and conveyed that I will not recommend advancement for these Indemnitees going forward unless they satisfy alternative conditions for advancement. The remaining question is whether these Indemnitees should be advanced amounts for Prior Period Invoices dating after August 2022, when the conditions for advancement were not satisfied.

On the one hand, if I recommend that these invoices not be paid, I would in effect be seeking to suspend advancement rights retroactively, *i.e.*, after fees were incurred and before notice was given that rights would be suspended. This course arguably raises fairness and reliance concerns in light of the fact that the Fund accepted most of these invoices in the ordinary course without objection prior to my appointment as Special Master.[7] It might also result in litigation with the Fund and cause the Fund to incur additional attorneys' fees, which I do not believe would be in the best interests of the Fund or its shareholders.

On the other hand, Delaware law imputes to directors knowledge of advancement conditions. As the Delaware Chancery Court noted in *Xu Hong Bin v. Heckmann Corp*, directors are bound by any limitations on advancement and indemnification existing at the time they begin service on the board. 2010 WL 187018 at *4 (Del. Ch. January 8, 2010) ("I must proceed on the assumption that directors of Delaware corporations read the articles and bylaws before joining the board, particularly those provisions that relate to indemnification and advancement rights.") It may also be the case that the Fund has no power under the Act to permit advancement when prescribed conditions are not met.

---

[6] This figure does not include 14 Prior Period Invoices dated prior to September 2022 that were not submitted to the Fund contemporaneously, totaling $477,443.44. Four Prior Period Invoices not submitted to the Fund, totaling $50,074.35, were for services performed after August 2022.

[7] The invoices for December 2022 and January 2023 services were not received by the Fund prior to my appointment, but the services were rendered prior to that time.

Hon. P. Kevin Castel
March 29, 2023
Page 6

Although I am concerned about the reliance and fairness issues, Delaware law seems to be clear that trustees are charged with knowledge of advancement conditions.  Moreover, the status of insurance coverage was not unknown to these Indemnitees, who were actively involved in the class settlement discussions and understood that the Fund's existing insurance would be contributed to the proposed settlement.  More importantly, I am concerned that the Act may prohibit the Fund from advancing fees and expenses once conditions permitting advancement are no longer satisfied.

I believe that legitimate arguments exist on both sides.  On balance, however, I believe the stronger argument is that Indemnitees are bound by the conditions set forth in the Declaration and the Act.  Accordingly, I recommend that the Court approve payment of **$403,117.32** to these Indemnitees, which includes payment for all Prior Period Invoices for services performed prior to August 17, 2022, except for 14 Prior Period Invoices that were not previously submitted to or accepted by the Fund. With respect to these 14 invoices and all later invoices, Indemnitees will be eligible to seek indemnification if they are ultimately found not to have committed disabling conduct.  The Prior Period Invoices that I recommend for payment were accepted by the Fund without objection and are in my view valid and good faith obligations of the Fund.

Davis Wright Tremaine LLP represents Quasar.  Davis Wright Tremaine has outstanding invoices totaling **$8,347.50** for the period prior to entry of the initial order on January 10, 2023:

| | |
|---|---|
| Opt Out Litigation (December 2022) | $2,257.00 |
| Opt Out Litigation (December 2022) | 1,764.00 |
| Government Investigations | 1,161.00 |
| Opt Out Litigation (January 1-9, 2023) | 2,652.00 |
| Opt Out Litigation (January 1-9, 2023) | 422.50 |
| Opt Out Litigation (January 1-9, 2023) | 91.00 |

The invoices are attached as Appendix C-2.

Based on my review of the Distribution Agreement between Quasar and the Fund, I have determined that Quasar is entitled to advancement of fees because it has satisfied the conditions imposed by the Agreement and the Act for advancement.  The invoices were accepted by the Fund without objection and are in my view valid and good faith obligations of the Fund.

**D.  SLC Fees**

The SLC was appointed by TAP's Board of Trustees to investigate potential claims that the Fund may have against third parties.  Its members are John Siciliano and myself.  Outstanding invoices for the SLC for December 2022 and January 1-9, 2023 total **$40,200.37**:

| | |
|---|---|
| John Siciliano | |
| December SLC Services | $23,941.87 |
| January 1-9, 2023 SLC Services | 2,536.00 |

Hon. P. Kevin Castel
March 29, 2023
Page 7

|  |  |
|---|---|
| Andrew M. Calamari | |
| December SLC Services | $11,606.50 |
| January 1-9, 2023 SLC Services | 2,116.00 |

The invoices are attached as Appendix D.

### E.  SLC Counsel Fees

Finn Dixon & Herling LLP ("FDH") represents the SLC.  FDH's outstanding invoices for November and December 2022 and January 1-9, 2023, total **$161,097.64**:

|  |  |
|---|---|
| November 2022 Services to the SLC | $59,302.30 |
| December 2022 Services to the SLC | 80,017.25 |
| January 1-9, 2023 Services to the SLC | 21,778.09 |

The invoices are attached as Appendix E.

Accordingly, I respectfully request that, pursuant to the Amended Order, the Court authorize me to pay the foregoing amounts totaling **$1,027,201.70** that are due and owing by the Fund.

Respectfully submitted,

Andrew M. Calamari

cc (with Appendices):
Susan DeCicco, Esq.
Michael Cabin, Esq.
James Goldfarb, Esq.
Neal Jacobson, Esq.
Mr. John Siciliano
Daniel S. Noble, Esq.